OPINION OF THE COURT
 

 Bellacosa, J.
 

 In early August 1983, over 11 years ago, an underground water main burst near 38th Street and 7th Avenue in Manhattan. The unleashed waters flooded the subbasement of the Navarre Building at 500-512 Seventh Avenue, where Consoli
 
 *475
 
 dated Edison maintained an electricity supply substation. A fire broke out in the subbasement when the waters seeped into the substation and came into contact with Con Edison’s electrical equipment. The fire engulfed the substation, causing extensive damage which disrupted the flow and supply of electricity to most of the Manhattan "Garment Center” for four days. The disaster occurred during the biannual "Buyers Week,” when merchandisers from all over the world were in New York City to visit fashion showrooms, to examine merchandise and to place orders for lines of goods for future seasons.
 

 Alleging various acts of negligence, some 200 Garment Center businesses brought over 50 lawsuits against Con Edison, the owners and managing agents of the Navarre Building ("real estate” defendants), the City of New York, Empire City Subway Company and New York Telephone. This group of plaintiffs included those who did have and those who did not have a direct contractual relationship with the appellant utility. The claims of those plaintiffs having a direct contractual relationship with appellant Con Edison are not the subject of this appeal.
 

 Before this Court are the claims of the commercial tenants of the Navarre Building and of other Garment Center properties who had no direct contractual relationship with Con Edison. These noncontract customer claims were reinstated by the Appellate Division after Supreme Court dismissed them. These tenants sued, claiming a connected duty relationship with Con Edison by virtue of their lease agreements, which obligated them to pay an apportioned share of the electricity expenses to the direct contracting entities, their landlords.
 

 Among these noncontractually related plaintiffs are those who alleged physical damages and associated economic losses, as well as those who asserted only pure economic losses, such as lost profits, overhead expenses, and out-of-pocket expenses resulting from their inability to conduct business during "Buyers Week.” These noncontract plaintiffs’ claims are the sole subjects of this narrow certified question appeal.
 
 *
 

 The central issue involves the scope of the duty owed by the electricity supplying utility to noncontractual users. Specifically, the Court must decide whether a regulated utility owes
 
 *476
 
 a duty of due care, answerable in negligence, to commercial tenants who do not have service contracts with the utility, but who are obligated under their leases to reimburse their landlords for apportioned electricity costs.
 

 We agree with the Supreme Court determination that, under the facts of this case, the utility does not owe such a duty to these commercial tenants who lack a direct contractual arrangement with it. The certified question, thus, should be answered in the negative, and the order of the Appellate Division should be modified in accordance with this opinion.
 

 L
 

 Supreme Court limited appellant Con Edison’s liability to its direct customers. That court, at a summary judgment stage, (1) dismissed all claims by plaintiffs who were tenants without a direct relationship with Con Edison; (2) dismissed all claims against all defendants which were predicated solely upon economic losses unassociated with any property damage; (3) dismissed all claims against the real estate defendants by nontenants of the Navarre Building; and (4) dismissed, without prejudice, the cross claims, counterclaims, and third-party actions in relation to the underlying primary complaints that had been dismissed.
 

 The Appellate Division modified to the extent of (1) reinstating all claims against Con Edison of those plaintiffs which were dismissed for lack of a direct contractual relationship with the defendant utility, including for loss of profits, and (2) dismissing the tenants plaintiffs’ claims against the real estate defendants, and otherwise affirmed (199 AD2d 75). The Appellate Division granted Con Edison leave to appeal, certifying the question whether its order was properly made.
 

 Hi
 

 Relying principally on
 
 Strauss v Belle Realty Co.
 
 (65 NY2d 399), appellant Con Edison argues that it should suffer no duty, answerable in tort, to commercial tenants who lack a direct contractual relationship with it as the electricity supplying utility. Con Edison argues that the Appellate Division ruling transgresses the public policy precedential authorities of this Court by expanding the utility’s "orbit of duty” to an "uncontrollable degree,” and thus exposing the strictly regulated public utility to potentially crushing liability
 
 (see, Strauss v Belle Realty Co., supra,
 
 at 404-405).
 

 
 *477
 
 Plaintiffs-respondents assert that their lack of direct contractual linkage to the utility should not be an absolute bar to suit against it. They contend that as tenants of a commercial building — be they direct contractual customers or ultimate consumers-users and, hence, indirect customers — they are a well-defined, reasonably identifiable class. Therefore, allowing tort exposure or responsibility in favor of this class of plaintiffs would not unduly expand the appropriate scope of the utility’s liability. Plaintiffs-respondents also tender a distinguishing feature to their cases. They stress that their injuries occurred in locations where plaintiffs have a proprietary interest in direct need of the electricity product and services and that their lease responsibilities are also directly keyed to costs proportioned for their actual use of supplied electricity.
 

 m.
 

 This Court has from time to time addressed the scope of the duty of a utility, or a similarly situated entity, arising from negligence in the performance of contractual obligations
 
 (see, e.g., Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,
 
 76 NY2d 220;
 
 Strauss v Belle Realty Co.,
 
 65 NY2d 399,
 
 supra; Moch Co. v Rensselaer Water Co.,
 
 247 NY 160). Consistently, this Court has emphasized that determining the scope of the duty and the consequent sphere of potential liability is fundamentally a policy question, with the objective being to " 'fix[ ] the [entity’s] orbit of duty’ ” so as to " ' "limit the legal consequences of wrongs to a controllable degree” ’ ”
 
 (Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra,
 
 at 226-227;
 
 Strauss v Belle Realty Co., supra,
 
 at 402;
 
 Moch Co. v Rensselaer Water Co., supra,
 
 at 164-168;
 
 cf., Palka v Servicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 585-587). We noted in
 
 Palka
 
 that the existence and scope of an alleged tortfeasor’s duty, at the threshold, is a legal, policy-laden determination dependent on consideration of different forces, including logic, science, competing socioeconomic policies, and contractual assumptions of responsibility.
 

 Applying our benchmarks, we have as a general policy and approach declined to leapfrog duties, over directly juridically related parties, to noncontractually related consumers of a utility’s service or product
 
 (Strauss v Belle Realty Co.,
 
 65 NY2d 399,
 
 supra).
 
 There, this Court rejected a tenant’s effort to recover against Con Edison for personal injuries sustained in the common areas of the tenant’s building during a blackout
 
 (id,.,
 
 at 404-405). Focusing on the competing policies of
 
 *478
 
 "extending] the defendant’s duty to cover specifically foreseeable parties but at the same time [ ] containing] liability to manageable levels”, we expressly eschewed extending the utility’s duty to the tenant plaintiff in that case
 
 (id.,
 
 at 404). This Court so held, notwithstanding the fact that plaintiff was a tenant in the apartment building where the injury occurred
 
 (id.; see also, Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,
 
 76 NY2d 220, 222,
 
 supra; contrast, Palka v Servicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 587-589,
 
 supra).
 
 Our precedents thus warrant the view and conclusion that tenants of a building, as such, are not a sufficiently "narrowly defined class” and should not be relieved of the usual juridical relationship prong in order to garner a potential liability against the utility
 
 (Strauss v Belle Realty Co.,
 
 65 NY2d 399, 402, 404-405,
 
 supra; see also, Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,
 
 76 NY2d 220, 226-227,
 
 supra).
 

 Consequently, plaintiffs’ attempt to distinguish
 
 Strauss,
 
 based simply on the situs of the injury, is unavailing in this case. The locale in which the injuries occur, in circumstances such as these, is a distinction without a legal, public policy-rooted difference because, regardless of the situs, the same unlimited, undefined class of potential plaintiffs is implicated. In essence, in
 
 Strauss,
 
 the identical potential plaintiff group was involved; namely, building tenants with no direct contractual linkage to the utility, whose landlord had a contractual relationship with the utility. Given that here the same class of plaintiffs and public policy factors are under consideration, the location of the occurrence of the injuries is an insufficient basis upon which to extend defendant Con Edison’s "orbit of duty” to this noncontract, proprietary, tenant class
 
 (see, Strauss v Belle Realty Co.,
 
 65 NY2d 399, 404,
 
 supra).
 
 We reject plaintiffs-respondents’ reasoning because it would hold regulated utilities liable to every tenant in every one of the countless skyscrapers comprising the urban skyline. This would unwisely subject utilities to loss potentials of uncontrollable and unworkable dimensions
 
 (see, Strauss v Belle Realty Co., supra).
 

 We are also persuaded that plaintiffs-respondents cannot seek recovery as third-party beneficiaries of the contract between their landlords and the defendant utility
 
 (compare, Koch v Consolidated Edison Co.,
 
 62 NY2d 548, 553,
 
 cert denied 469
 
 US 1210). In
 
 Koch v Consolidated Edison Co.,
 
 this Court held Con Edison liable to PASNY customers on a third-party beneficiary theory, where Con Edison had
 
 expressly
 
 under
 
 *479
 
 taken a contractual duty to supply electricity for the needs of PASNY’s customers
 
 (id.,
 
 at 558-559). In marked contrast, however, in the instant case, there is no such express undertaking by the utility, and, consequently, there is no basis to allow plaintiffs’ recovery on a third-party beneficiary theory
 
 (compare, Palka v Servicemaster Mgt. Servs. Corp., 83
 
 NY2d 579, 588-589,
 
 supra).
 

 All other arguments and contentions have been considered, and we conclude that they are without merit.
 

 Accordingly, the order of the Appellate Division should be modified in accordance with this opinion, in effect reinstating the order of the Supreme Court to the extent that it dismissed the claims of noncontract plaintiffs against the utility, and the certified question should be answered in the negative, with costs to Con Edison against the dismissed plaintiffs-respondents only, and, as so modified, the order should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Cipabick concur.
 

 Order modified in accordance with the opinion herein, with costs to appellant against the dismissed plaintiffs-respondents, and, as so modified, affirmed, and certified question answered in the negative.
 

 *
 

 We do not read the Appellate Division order as also having reinstated the claims of contractually related customers who alleged purely economic loss. Hence, we do not address that matter, as it is not properly before us.