USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1687 CHESHIRE MEDICAL CENTER, Plaintiff - Appellant, v. W. R. GRACE & CO., Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ ____________________ Before Selya and Cyr, Circuit Judges, ______________ and Keeton,* District Judge. ______________ _____________________ Daniel A. Speights, with whom Michael P. Hall, Nixon, Hall __________________ ________________ ___________ and Hess and Speights & Runyan, were on brief for appellant. ________ _________________ Richard V. Wiebusch, with whom Harry T. Daniels, Jane Cetlin ___________________ ________________ ___________ Pickrell, Hale and Dorr, Howard M. Cooper and Todd & Weld, were ________ ______________ ________________ ____________ on brief for appellee. ____________________ March 6, 1995 ____________________  ____________________ * Of the District of Massachusetts, sitting by designation. KEETON, District Judge. Appealing from a judgment for ______________ the defendant on a jury verdict, plaintiff-appellant argues an interesting undecided issue of New Hampshire law regarding the scope of strict liability on the ground of product defect in relation to warning and instructions for use. May a product marketer be held strictly liable on the basis of failure to warn, for harm to a building into which its product (containing asbestos fibers) was installed, even though the jury has found, in answering special questions, that plaintiff failed to prove any departure from ordinary prudence with respect to warning and instructions for use? We conclude that the jury findings, together with settled rules of federal procedural law and New Hampshire substantive law, preclude our reaching this interesting question. For the reasons explained, we affirm the judgment for the defendant on the verdict of the jury. I. I. Plaintiff-appellant alleged that defendant's product, Monokote 3, a fireproofing material, purchased in 1971 by a subcontractor in compliance with specifications, and used in constructing a building occupied and used at all relevant times by plaintiff (an entity designated in the general contract for construction of the building as "owner") was defective because of a percentage of asbestos particles in the product. In the various counts of the complaint, plaintiff alleged claims of negligence (in manufacture, sale, and warning), strict liability -2- for product defect, and breach of implied warranty. The case was submitted to a jury on special questions, Fed. R. Civ. P. 49(a). The jury returned the following answers: SPECIAL VERDICT FORM ____________________ 1. On the statute of limitations defense, do you find for the Plaintiff or the Defendant? x Plaintiff Defendant _____ _____ If you find for the Defendant on this issue, stop and return a verdict in favor of the Defendant. If you find for the Plaintiff on this issue, answer questions 2, 3, 4, 5 and/or 6. 2. On Plaintiff's negligence claim, do you find for the Plaintiff or the Defendant? Plaintiff x Defendant _____ _____ 3. On Plaintiff's products liability claim, do you find for the Plaintiff or the Defendant? Plaintiff x Defendant _____ _____ 4. On Plaintiff's implied warranty claim, do you find for the Plaintiff or the Defendant? Plaintiff x Defendant _____ _____ 5. If you found for the Plaintiff on one or more of its claims (questions 2, 3, or 4) please write the amount of damages you award to Plaintiff using words and figures (as in writing a check). Damages awarded: ----none----  ______________________ ($ ) 6. If you found for the Defendant on -3- each of Plaintiff's claims (questions 2, 3, and 4), then return a verdict in favor of Defendant. DATE: 11/3/93 /s/  __________ ______________________ Foreperson The court's charge to the jury included instructions advising the jury they should answer that the plaintiff had proved negligence if they found by a preponderance of the evidence that defendant failed to exercise ordinary prudence in manufacture, or in sale, or in relation to warning (including instructions for use). Thus, unless plaintiff-appellant shows some trial error that undermines this finding (and we conclude in Part III, infra, that plaintiff-appellant has failed to do so), _____ we must accept as an established fact that, in relation to warning and instructions for use of the product, plaintiff failed to prove any departure from ordinary prudence. The court's charge to the jury on strict liability ______ _________ failed to include any reference to warning or instructions for use. We assume, as did the trial court in considering plaintiff's motion for new trial, that this was error. See ___ Chellman v. Saab-Scania AB, 637 A.2d 148 (N.H. 1993). The trial ________ ______________ court concluded, however, that the error was harmless. So do we, though on somewhat different reasoning from that of the trial court because, unlike the trial court, we do not undertake to predict exactly how the Supreme Court of New Hampshire will resolve a novel issue of substantive law on which plaintiff- appellant relies. II. II. -4- It is settled law in New Hampshire that strict liability for product defect includes manufacturing defect, design defect, and warning defect. See Chellman, 637 A.2d 148; ___ ________ see also Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 661 _________ ______ __________________________ (1st Cir. 1981). New Hampshire cases have not yet determined, however, whether, as appellant asserts, a breach of the strict liability duty to warn can be proved on some basis short of proving failure to exercise ordinary prudence in relation to warning and instructions for use. Stated another way, the undecided question is whether the duty of warning under the strict liability theory requires something more of the marketer than does the duty of warning under negligence law and, if so, what. Whether the duty is more onerous is an unsettled question of New Hampshire substantive law. Contrary to appellant's assertion, this question of New Hampshire law was not decided in Chellman, 687 A.2d 148. Instead, that was a case in ________ which the plaintiff did not ask the court to submit a negligence claim to the jury. See id. at 151. In that context, omission ___ ___ from the trial court's charge of even an instruction on prudent care with respect to warning was reversible error because plaintiff was completely deprived of the opportunity to have the jury consider the duty-to-warn claim. In this case, in contrast, the jury did consider a duty-to-warn claim. They did so under the negligence question. And we must conclude that the jury rejected that claim because they were instructed that they should -5- find for plaintiff in answering the negligence question if they found for the plaintiff on other grounds or if they found that __ defendant failed to use ordinary prudence in relation to warning or instructions for use and that this failure was a cause of any harm sustained by plaintiff. In three separate avenues of attack, appellant seeks to avoid the preclusive effect of the jury finding of no causal negligence. The first avenue is a two-fold challenge to the finding itself, which we discuss in Part III. We examine the other avenues separately in Parts IV and V. III. III. Appellant has challenged the jury's finding of no causal negligence on two grounds. Appellant asserts that the trial court's duty-to-warn instruction on the negligence count was erroneous. Appellant also asserts that the trial court erred in failing to instruct the jury on the New Hampshire statutory asbestos exposure standard. We conclude that neither of these attacks has merit. A. The Duty-To-Warn Instruction Given A. The Duty-To-Warn Instruction Given Appellant challenges the duty-to-warn instruction given by the trial court on the negligence claim. The jury was instructed that the defendant had a duty to warn if it "knew or should have known that the fireproofing it sold to the plaintiff was dangerous to people or that it would damage property." Appellant argues that this instruction is erroneous because it requires the plaintiff to prove that the product "was dangerous." -6- Relying on language in Chellman, the appellant argues that a ________ defendant has a duty to warn if a product "may be dangerous." This argument is based more on form than substance. It is difficult to imagine what different meaning would be conveyed by an instruction, instead of that given, that the defendant had a duty to warn if it knew or should have known that the fireproofing it sold to the plaintiff may be dangerous. To the ___ extent that this phrasing conveys the same meaning -- for example, that the defendant had a duty to warn if the defendant knew or should have known that the product causes harm in some (but not necessarily all) instances -- the instruction given by the court was not in error. To the extent that appellant is urging that its proposed language conveys a different meaning -- that the defendant has a duty to warn if it should have known that there was a mere possibility that the product was in the category of dangerous products (i.e., one that causes harm in some instances) -- the argument for application of a legal test framed in this particular way has no basis in New Hampshire law. Under New Hampshire law, a manufacturer need not warn of all potential dangers associated with a product. See Thibault ___ ________ v. Sears, Roebuck & Co., 395 A.2d 843 (N.H. 1978)(manufacturer _____________________ need not warn of known, but very unlikely, risk of danger). Similarly, one may infer from this precedent that there is no duty to warn on the basis of speculation that a product might be dangerous. Thus, the meaning conveyed by the court's instruction -7- is closer to the formulations found in New Hampshire cases than is appellant's proposed alteration, which itself is subject to different interpretations, some of which are inconsistent with the formulations in the New Hampshire cases. Thus, appellant's challenge on this ground fails. B. The New Hampshire Asbestos Exposure Standard B. The New Hampshire Asbestos Exposure Standard Appellant challenges the trial court's failure to instruct the jury on the New Hampshire standard for indoor nonoccupational asbestos exposure. See N.H. Rev. Stat. Ann. 141- ___ E:6. This numerical standard (.01 f/cc) triggers the applicability of certain New Hampshire regulations concerning asbestos abatement procedures used as a part of construction or maintenance. The court instructed the jury on federal OSHA and EPA regulations, as well as the New Hampshire regulations establishing procedures to be followed during asbestos abatement projects. The court told the jury that the various state and federal statutes were relevant to the issue of damages only and not to the defendant's liability. Since the jury found no liability and therefore did not reach the issue of damages, the court's alleged error in failing to instruct the jury on the New Hampshire asbestos exposure standard is, in retrospect, irrelevant and therefore harmless, unless appellant can establish relevance to liability issues. Appellant's challenge on appeal contains the implicit assertion that the New Hampshire asbestos exposure standard is -8- relevant to the defendant's liability. The appellant, although objecting to the court's failure to instruct the jury on the New Hampshire statute, did not object to that part of the court's instruction telling the jury that these statutes were relevant to the issue of damages only and not to the issue of liability. The appellant having failed in its objections and request for instruction to articulate an argument for relevancy to liability or any legal basis for relevancy, we review the trial court's instruction only for plain error. See Poulin v. Greer, 18 F.3d ___ ______ _____ 979, 982 (1st Cir. 1994). We conclude that it was not plain error, if error at all. The New Hampshire asbestos exposure standard does not impose a rule of conduct on sellers of asbestos products or contractors using asbestos products. Instead, it establishes a threshold of authorization for the director of the Division of Public Health Services to take certain regulatory action, if warranted. See N.H. Rev. Stat. Ann. 141-E:8. In addition, it ___ triggers the applicability of certain safety regulations to asbestos removal and abatement projects at relevant buildings. See N.H. Rev. Stat. Ann. 141-E:7. ___ We conclude that no decision cited to us, and none of which we are aware, establishes a basis for plaintiff's assertion that the New Hampshire asbestos exposure standard is relevant to the defendant's liability. Moreover, given that the New Hampshire state regulators have taken no action with respect to appellant's building, the standard at issue bears only upon the -9- calculation of costs the appellant might incur in the future. For these reasons, we hold that even if there was error in the trial court with respect to this asbestos exposure standard, it was harmless in this case. -10- IV. IV. In oral argument and in its brief, appellant asserts that as a matter of substantive law a claimant is entitled to have the court instruct the jury that a claim of strict product liability is to be decided by a jury in a single evaluative finding after jury consideration of all relevant factors. Thus, for example, the appellant argues that if the jury thought there was some evidence of departure from ordinary prudence with respect to warning but not enough evidence for the jury to find departure from ordinary prudence by a preponderance of the evidence, the jury could nevertheless take this evidence into account among all the other factors they considered in deciding whether the product was defective. Appellant asserted in oral argument before this court that the jury in a strict product liability case is allowed to, and should be instructed to, make one overall weighing of all factors bearing upon (1) manufacturing defect, (2) design defect, and (3) warning defect. Appellant cites no precedent explicitly supporting this contention, and we are aware of none. Two independently significant points are implicitly essential to the validity of the argument. We consider each. A. Consideration of the Cumulative Effect of the Evidence A. Consideration of the Cumulative Effect of the Evidence Appellant's argument depends on an implicit assumption that a claimant need not establish independently, by a preponderance of the evidence, any one of the three separate theories of strict liability (manufacturing defect, design -11- defect, and warning defect). In the context of this case, appellant argues that the evidence of failure to warn, although not sufficient by itself to support a finding of strict liability by a preponderance of the evidence, may be combined by the jury with any evidence of a design defect and may result in a finding of strict liability by a preponderance of the evidence. In some cases, this would lead to the anomalous result that the jury could find defendant strictly liable by a preponderance of evidence without finding by a preponderance of the evidence a manufacturing defect, a design defect, or a warning defect. For example, the appellant implies that a plaintiff can prevail if the jury finds none of the three defects by a preponderance of the evidence and yet finds that the evidence shows a .40 probability of each and, in some unexplained way, a .51 probability of defect in its overall weighing of all evidence received at trial. This argument is flawed. A .40 probability of each of three separate defects cannot add up to a .51 probability overall. Instead, in this assumed circumstance, unless the three are interdependent (as they may be), there is no better than a .064 probability (.40 x .40 x .40) that all three are true, and neither mathematically nor as a matter of common sense do three .40 probabilities show a .51 probability that one of the three or some combination of two or all three is true. Moreover, as a matter of settled law, judicial opinions -12- and commentators alike refer to proof of manufacturing defect, design defect, and warning defect as three different ways of proving product defect, not just as factors bearing upon one way of proving product defect. See Brochu, 642 F.2d at 661 ___ ______ (discussing separately the "design-defect theory" and the "duty- to-warn theory" with respect to jury instructions under New Hampshire law); Thibault, 395 A.2d at 846 (distinguishing policy ________ factors bearing upon strict liability for manufacturing defect from those bearing upon strict liability for design defect and citing James A. Henderson, Jr., "Judicial review of Manufacturers' Conscious Design Choices: The Limits of Adjudication," 73 Colum. L. Rev. 1531 (1973)); see also _________ Restatement (Third) of Torts: Products Liability, 2 cmt. a, Tentative Draft No. 1 (Apr. 12, 1994)(setting forth "separate standards of liability for manufacturing defects, design defects, and defects based on inadequate instructions or warnings," and explaining different sets of policy arguments and objectives for the separate standards); id., Reporters' Note, at 35-80 ___ (explaining the Reporters' view that the formulation of separate standards for manufacturing, design, and warning defects is consistent with the weight of precedent); Oscar S. Gray, "The Draft ALI Product Liability Proposals: Progress or Anachronism?" 61 Tenn. L. Rev. 1105, 1108 (1994)(although criticizing the ALI Tentative Draft in other respects, accepting the point that "the overwhelming body of interpretation by the courts has accepted the three-pronged differentiation between manufacturing, design, -13- and warning defects"). Appellant cites Chellman as holding, or at least ________ implying, that there is only one strict product liability theory in New Hampshire law, and that only one question about the adequacy of plaintiff's proof of strict liability should be submitted to a jury. A close reading of the case, however, does not support the view that Chellman addressed the choice between ________ (a) treating manufacturing defect, design defect, and warning defect as separate theories, each involving a distinctive standard for determining liability, and (b) treating the three as merely factors in a single multiple-factors standard for making an evaluative determination that a product is or is not a defective product. In Chellman, the defendant argued that strict liability ________ for design defect and strict liability for failure to warn were distinct, and that the plaintiff had failed to plead a strict- liability-for-failure-to-warn claim. See Chellman, 687 A.2d at ___ ________ 151. In deciding that the plaintiff's complaint sufficiently stated a strict liability claim, on the basis of inadequate warning, to meet plaintiff's burden of pleading, see id., the ___ ___ court did not need to or purport to decide whether proving defective warning and proving defective design in respects apart from warning were two separable ways of proving strict product liability. Thus, Chellman neither endorses nor rejects the ________ general proposition that manufacturing defect, design defect, and warning defect are commonly treated by courts and commentators as -14- three separate ways of proving product liability. The commonly accepted understanding that a plaintiff must establish one or another of the three kinds of defects (manufacturing defect, design defect, or warning defect) by a preponderance of the evidence leaves the jury entirely free to weigh a single item of evidence as relevant to claims of two or even all three kinds of defect. Thus, for example, New Hampshire case law supports the proposition that evidence concerning the existence and adequacy of a warning is relevant not only to a warning defect claim, but also to a design defect claim. See ___ Chellman, 637 A.2d at 150; Reid v. Spadone Machine Co., 404 A.2d ________ ____ ___________________ 1094, 1097 (N.H. 1979)("This condition [the placement of certain buttons on a machine], coupled with inadequate warnings against two-person use, could properly be found to have made the machine 'unreasonably dangerous.'"). The issue before us now, however, does not concern admissibility of evidence. The jury was free under the court's rulings, absent limiting instructions, to consider all evidence received at trial. In these circumstances, we conclude that the jury's finding of no violation as to the duty-to-warn negligence claim bars the strict-liability-duty-to-warn claim. This is so because in finding that there was no liability for failure to warn on the negligence theory the jury necessarily found either (1) that plaintiff failed to prove that the defendant's warnings and instructions violated the prudent care standard or (2) that, if the warning was inadequate, plaintiff failed to prove that the -15- inadequacy of the warning caused the plaintiff's injury. ______ Under either of the two possible interpretations of the jury's finding, the jury has determined that plaintiff has failed to prove by a preponderance of the evidence any violation of a duty of prudent care as to warning. This bars the strict- liability-as-to-warning claim unless the law of New Hampshire imposes a more onerous duty than one of prudent care as part of the law of strict product liability. B. An All-Factors Evaluative Determination B. An All-Factors Evaluative Determination Appellant's weighing-of-all-factors argument, if taken at face value and without qualification, leads implicitly to a surrender of judicial responsibility for instructing the jury to respect the law's outside limits on jury discretion. It is true that appellant's argument for an unlimited all-factors evaluative determination by the jury has a surface plausibility, which may appear to be reinforced by support in some states for application of a standard requiring the jury to "weigh competing factors much as they would in determining the fault of the defendant in a negligence case." Back v. Wickes, 378 N.E.2d 964, 970 (Mass. ____ ______ 1978). Thus: In evaluating the adequacy of a product's design, the jury should consider, among other factors, "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." -16- Id. at 970 (quoting Barker v. Lull Eng'r Co., 573 P.2d 443 (Cal. ___ ______ ______________ 1978) and citing Bowman v. General Motors Corp., 427 F. Supp. ______ ____________________ 234, 242 (E.D. Pa. 1977)). The plausibility of appellant's argument is reinforced by the statement of the Supreme Court of New Hampshire in Thibault that: ________ Inquiry into the dangerousness of a product requires a multi-faceted balancing process involving evaluation of many conflicting factors . . . . Reasonableness, foreseeability, utility, and similar factors are questions of fact for jury determination. Thibault, 395 A.2d at 846-47; see also Espeaignnette v. Gene ________ ________ _____________ ____ Tierney Co., No. 94-1258, slip. op. at 10 (1st Cir. Dec. 28, ___________ 1994)(citing St. Germain v. Husqvarna Corp., 544 A.2d 1283 (Me. ___________ ________________ 1988) and discussing the "danger-utility" test used by the Maine courts). Perhaps even more supportive of appellant's argument is another passage from the opinion of the Supreme Judicial Court of Massachusetts in Back v. Wickes Corp.: ____ ____________ In balancing all of the pertinent factors [in deciding whether there was a design defect] the jury makes a judgment as to the social acceptability of the design, and this is the same judgment originally made by the designer of the product. 378 N.E.2d at 970. Even if one takes these passages to mean that some policy weighing is left to the jury, however, it does not follow that the legal system approves an unlimited all-factors evaluative determination by the jury. Even when approving a -17- multiple-factors-weighing-test for jury use in finding an "ultimate fact," such as product defect, the legal system does not authorize the jury to give whatever weight the jury chooses to arguments of public policy for and against strict liability. To do so would leave to the jury an authority and responsibility that is unguided by any public policy determinations made in statutes and precedents. Ordinarily issues of public policy are in the first instance appropriate for a legislature's determination by statute and, if not determined by statute, may be determined by a state court of last resort in its decisions setting precedents. We do not understand appellant's counsel as explicitly arguing for a broad and sweeping jury discretion that extends to public policy issues ordinarily decided by statutes or precedents. We consider the argument in this extreme form, however, because of the procedural posture of this case. Appellant seeks a new trial despite a supportable jury finding that defendant did not fail to exercise ordinary prudence with respect to warning and instructions for use. This contention, however, is procedurally barred unless plaintiff proffered an instruction or objection clearly giving the trial judge and the opposing party notice of this theory of claim, including a formulation of an acceptable limit or qualification to distinguish plaintiff's contention from an argument for unlimited jury discretion. Thus, we consider the more extreme implications of the unqualified argument to make the two points -18- that a limit is essential and that the burden is on the plaintiff to propose an acceptable explanation of that limit rather than asking a trial court to leave a jury unguided. To sustain appellant's argument for a new trial on the procedural record before us, we would have to determine that New Hampshire tort law places no limit on the jury's authority, in reaching the jury's overall evaluative finding in a strict liability case, to weigh all policy arguments (or at least those policy arguments supported by any evidence received in the trial) for and against strict liability, in reaching the jury's overall evaluative finding in a strict liability case. We cannot say that New Hampshire has adopted, and cannot predict that it will adopt, the novel position that the jury has this authority. Allowing the jury such sweeping authority would be contrary to premises so fundamental that courts only rarely sense a need to advert to them. The first of these basic premises of settled law concerns the role of precedent in the legal system. A court's acceptance of an argument for a literally "all-factors" evaluative decision by a jury of a strict product liability claim would have the effect of delegating to the jury the authority and responsibility for weighing conflicting arguments of public policy bearing upon the scope and limits of strict liability and striking the balance that determines the legal system's answer, case by case. This would undermine the function of precedent in ____ __ ____ the legal system -- to promote evenhanded decision of like cases -19- alike. Judicial decisions considering similar arguments for jury discretion to weigh public policy arguments have rejected the idea. See, e.g., Shackil v. Lederle Laboratories, 561 A.2d 511, ___ ____ _______ ____________________ 528 (N.J. 1989) (the majority, over vigorous dissent, declined to leave to a jury a public policy choice that, it was argued, would drive DPT vaccine for infants off the market); Bammerlin v. _________ Navistar Int'l Transp. Corp., 30 F.3d 898 (7th Cir. 1994)(the _____________________________ trial court, not the jury, should have made the evaluative determination whether a truck cab manufacturer complied with federal safety standards); Bryant v. Tri-County Electric ______ ____________________ Membership Corp., 844 F. Supp. 347 (W.D. Ky. 1994)(the court, not ________________ the jury, weighed "the public policy goals of protecting consumer and discouraging the sale of defective goods" and held that the strict liability doctrine applied to the services of electric utilities). But cf. Dawson v. Chrysler Corp., 630 F.2d 950 (3d _______ ______ ______________ Cir. 1980), cert. denied, 450 U.S. 959, 962-63 (1981)(recognizing ____________ the dangers of such a case-by-case determination in the context of motor vehicle safety standards but declining to reverse a judgment entered on a verdict of a jury that was allowed very broad discretion by the trial court's charge). A second basic premise of settled law is that determinations of liability (whether under a concept of "duty" or "cause" or some other terminology such as "scope of liability") are never exclusively "fact" questions to be decided by a jury, or by a judge as factfinder in a non-jury trial. Even when some disputed issue of historical fact is relevant, the determination -20- of "duty," "cause," or "scope of liability" is a mixed law-fact determination rather than exclusively a fact question. See, ___ e.g., Deguio v. United States, 920 F.2d 103, 105 (1st Cir. ____ ______ ______________ 1990)(determination of negligence is a mixed question of law and fact and entitled to clear error standard of review); St. Paul ________ Fire & Marine Ins. Co. v. Caguas Fed. Sav. & Loan Ass'n, 867 F.2d ______________________ _____________________________ 707, 708 (1st Cir. 1989)("Negligence and causation are traditionally mixed questions of fact and law."); cf. Milliken & ___ __________ Co. v. Consolidated Edison Co., 63 U.S.L.W. 2361 (N.Y. Ct. App. ___ ________________________ 1994)("The existence and scope of an alleged tortfeasor's duty, at the threshold, is a legal, policy-laden determination dependent on consideration of different forces, including logic, science, [and] competing socio-economic policies . . . ."). When a jury participates in the determination of a mixed-law-fact question, it does so under instructions from the trial judge explaining the legal aspects of the evaluative "finding" the jury makes. See Kissell v. Westinghouse Electric ___ _______ _____________________ Corp., 367 F.2d 375, 376 (1st Cir. 1966)(special interrogatories _____ to the jury can be mixed questions of law and fact, if the jury is properly instructed as to the law); see also Chellman, 637 _________ ________ A.2d at 151 ("Clear and intelligible jury instructions are particularly important to explain complex or confusing legal concepts."). In the face of these settled principles, no decision cited to us, and none of which we are aware, in New Hampshire or elsewhere, requires the submission to the jury of a single -21- evaluative question determining a strict liability claim. We conclude that, in deciding this appeal in a diversity case, we should not predict an expansion of strict liability under New Hampshire law to the extent of permitting juries a discretion not guided by instructions on the limits set by the public policy choices, explicit and implicit, in New Hampshire statutes and precedents. Cf. Thibault, 395 A.2d at 847 (indicating that the ___ ________ strict liability cause of action is narrower in New Hampshire than in some other jurisdictions); Bagley v. Controlled ______ __________ Environment Corp., 583 A.2d 823, 826 (N.H. 1986)(discussing __________________ Buttrick v. Lassard and stating that the strict liability actions ________ _______ are limited to claims for which requiring a plaintiff to prove negligence would pose "a practical barrier to otherwise meritorious claims"). V. V. Remaining for consideration is appellant's argument that even if the jury should not be allowed such sweeping discretion, at least appellant should be allowed a new trial to seek a jury finding under an instruction on duty to warn somewhat more burdensome to a defendant than merely a duty of ordinary prudence. This issue, however, is the question stated at the beginning of this Opinion. It is the interesting question that, on federal procedural grounds, we conclude we should not reach in this case. Not having objected precisely on this ground and not having proposed to the trial judge an acceptable instruction to the jury on a question that, viewed most favorably to appellant, -22- is a mixed-law-fact question, appellant is precluded from advancing this contention now. Plaintiff's requests for instruction and objection to the charge, generously construed in plaintiff's favor, were sufficient, we assume, to alert the trial judge to plaintiff's contention that a departure from ordinary prudence with respect to warning and instructions for use would render the product defective for the purpose of plaintiff's strict liability claim. In its denial of the motion for new trial, the trial court conceded that its instruction had been in error in this regard. Apart from this ground of request and objection, however, plaintiff proffered no form of instruction on duty to warn as part of the strict liability claim. For this reason, the request and objection were not specific enough to preserve any other issue with respect to the strict liability instruction for consideration on motion for new trial or on appeal. See Fed. R. ___ Civ. P. 51; see also Jordan v. United States Lines, Inc., 738 ________ ______ ___________________________ F.2d 48 (1st Cir. 1984)(holding that appellant's objection to the trial court's instruction on the definition of "unseaworthiness" was not specific enough to satisfy Rule 51). Moreover, even in the brief before this court and on oral argument, appellant has failed to propose any instruction that would define the issue or issues left to be tried after we accept, as already tried and fairly determined, the issues decided by the jury verdict. The jury findings (which we have determined are not undermined by any of appellant's attacks) must stand. And, as we -23- have noted, appellant has not proffered any definition of an issue, for which there is support in precedent or in reason, left to be tried on new trial. To remand for new trial without providing any guidance about the issue or issues to be tried would be inappropriate. And, of course, it would be manifestly unfair to set aside the fairly determined jury findings and award a new trial without limitation. Thus, we affirm the trial court's denial of the plaintiff's motion for new trial. CONCLUSIONS CONCLUSIONS First. Plaintiff-appellant's challenges to the jury findings on the basis of the instructions given on duty to warn in negligence are without merit and the jury findings establish that plaintiff failed to prove causal negligence in any relevant way (including due care in warning and instructions for use) and plaintiff failed to prove that defendant is strictly liable on any ground apart from failure to warn. Second. Plaintiff-appellant's requests for instruction and objection to the charge on the strict liability claim were not sufficient to preserve on motion for new trial and on appeal the contention that, under New Hampshire law, the duty to warn as a part of a strict liability claim requires more of a defendant than does the duty to warn in a negligence claim. Third. New Hampshire substantive law does not require that a product defect be determined on the basis of an unlimited all-factors weighing by a jury, unguided by statutory and decisional limitations on the scope of strict liability. -24- Fourth. In light of these conclusions, the jury's verdict in defendant's favor on the duty to warn as part of the negligence claim precludes a finding in plaintiff's favor on the duty to warn as part of the strict liability claim, and any error of the trial court with respect to the instruction on strict liability was harmless. Judgment for defendant is AFFIRMED, with costs. -25-