Lisa A. VARANO, Plaintiff, Appellant,

v.

Michael G. JABAR, d/b/a Mike's Roof-
ing Company;  Stern Company, Inc.,
Defendants, Appellees.

No. 99–1094.

United States Court of Appeals,
First Circuit.

Heard Sept. 8, 1999.

Decided Nov. 24, 1999.

William C. Knowles, with whom Gene R. Libby, Rita H. Logan and Verrill & Dana, LLP were on brief, for appellant.

James Q. Shirley, with whom Sheehan Phinney Bass + Green, P.A., Anna Barbara Hantz and Gottesman and Hollis, P.A. were on brief, for appellee Michael G. Jabar d/b/a Mike's Roofing Company.

Before STAHL, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and LYNCH, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Lisa Varano appeals from the judgment as a matter of law entered against her on her products liability claim against Michael Jabar, and also from the judgment entered against her on a jury verdict on her negligence claim. Varano claimed she became ill from fumes released when Jabar, doing business as Mike's Roofing, used an adhesive containing isocyanates to repair the roof above the store where Varano was working. After Varano presented her case, the district court entered judgment as a matter of law against her on her strict liability failure-to-warn claim because the court concluded that Jabar was not a "seller" of the adhesive, which is a statutory element of Varano's claim under Maine law. The court permitted Jabar to introduce evidence that he had used the adhesive in the past without any problems. The court submitted Varano's negligence claim to the jury, but refused Varano's requested res ipsa loquitur instruction on the ground that Varano had not adduced evidence that would warrant the instruction. The jury returned a verdict for Jabar. On appeal, Varano argues that the district court erred in entering judgment against her on her strict liability claim, in permitting Jabar to introduce evidence of his past use of the adhesive without injuries, and in denying her requested res ipsa loquitur instruction. We affirm.

Varano testified that on February 17, 1995, she was working in her office in the back of the Nautica store in a mall in Kittery, Maine. She heard some banging on the roof of the store, followed by the presence of a strong odor of glue or adhesive. She went outside the store and saw that employees of Jabar's company, Mike's Roofing, were working on the roof. Back inside the store, Varano found that the odor had grown stronger, so she called the property management company to report the problem. As the day went on, the odor became stronger until Varano could see a "vapor" and a "haze" in the room.

By the next day, Varano had a sore throat and chest discomfort. She was admitted to the emergency room on March 2 and March 8, 1995 because she was experiencing chest pains and could not breathe.

On March 9, 1995, Jabar's employees were back at work on the roof of the mall. When Varano arrived at work, one of her coworkers told her that the odor had returned. Varano again called the management company to complain. In response, two of Jabar's employees and Jabar's wife, Wendy Collins, came to the Nautica store. Varano asked them what they were using on the roof. One of Jabar's employees left and returned with a can of Firestone Splice Adhesive. He opened the can, and Varano identified the odor as the one she had smelled in the store on February 17.

After the incidents at the store in February and March 1995, Varano was diagnosed with occupational asthma, induced

* Of the Eighth Circuit, sitting by designation.

by exposure to isocyanates. Splice Adhesive contains isocyanates.

Varano sued Jabar, alleging a products liability claim for failure to warn of the danger posed by exposure to Splice Adhesive and negligence[1] in failing to warn her. Varano's theory was that there was a "release" of Splice on the roof that worked its way down through the decking of the roof into the back of the Nautica store where Varano was working. Jabar's expert testified that Varano could not have been exposed to levels of isocyanates sufficient to cause asthma in connection with the use of Splice Adhesive on the roof. Jabar's medical expert testified that Varano's medical condition was not caused by isocyanate exposure, but rather by recurrent infections. The district court granted judgment as a matter of law against Varano on the ground that Jabar was not a "seller" of Splice Adhesive within the meaning of Maine's products liability statute, Me.Rev. Stat. Ann. tit. 14, § 221 (West 1997). The court submitted Varano's negligence claim to the jury, which found for Jabar.

## I.

■ Varano argues that the district court erred in entering judgment as a matter of law against her on her strict liability claim on the ground that Jabar was not a seller of Splice Adhesive within the meaning of Me.Rev.Stat. Ann. tit. 14, § 221. We conclude that, whether or not Jabar was a seller under Maine law, the court submitted to the jury the same elements in the negligence instruction as Varano would have been entitled to under a strict liability failure-to-warn instruction. Therefore, any possible error in denying Varano the chance to submit her strict liability failure-to-warn claim to the jury was harmless.

Varano's complaint pleaded a strict liability claim based only on failure to warn of danger associated with the use of Splice Adhesive.[2] Varano's tendered strict liability instruction included a statement that the "roofing products may be defective and unreasonably dangerous because of a failure to provide adequate warnings regarding potential dangers involved in the use of the products." Varano's tendered instruction did not contain any indication that the jury had to find that Jabar knew or should have known of the danger to find Jabar liable for failure to warn of that danger. Jabar contends that, even assuming the district court erred in failing to submit the strict liability failure-to-warn claim to the jury, the error is harmless as a matter of law because the court instructed the jury on negligent failure to warn. Jabar argues that the two claims are so similar under Maine law that the jury's rejection of the negligence claim establishes that it would have also rejected the strict liability claim.

In *Cheshire Medical Center v. W.R. Grace & Co.*, 49 F.3d 26, 32–33 (1st Cir. 1995), we held that failure to submit a strict liability failure-to-warn instruction would be harmless if the court instructed on a negligent failure-to-warn claim and if the strict liability duty to warn was no more stringent than the duty of prudent care under New Hampshire law.

The Maine Supreme Judicial Court has stated that the duty imposed by Maine's products liability statute, Me.Rev.Stat. Ann. tit. 14, § 221, in a duty to warn context, is the "responsibility to inform users and consumers of dangers about which [the seller] either knows or should know at the time the product is sold." *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 540 (Me.1986), *quoted in Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197

1. She pleaded both negligent failure to warn and negligent failure to turn off the HVAC system, but the parties stipulated that failure to turn off the HVAC system was no longer an issue.

2. Varano tendered a broader products liability instruction that was not limited to liability for failure to warn, but she does not argue that she made a case for any sort of products liability claim other than failure to warn.

(Me.1990). "[T]his aspect of strict liability bears a strong resemblance to a negligence action." *Lorfano,* 569 A.2d at 196. The Maine court quoted the comments of Professor Prosser, who stated that the two claims are the same, except that the claim sounding in strict liability is subject to strict liability defenses and other limitations on liability, rather than the defenses and limitations relevant to negligence claims. *Id.* (quoting W. Prosser & W. Keeton, *The Law of Torts* § 99, at 697 (5th ed.1984)).

Thus, while the Maine Court indicated that there are differences in the defenses and limitations on liability applicable to the two causes of action, both causes spring from an identical duty of care:

> Regardless of whether a failure to warn claim is phrased in terms of negligence [or] strict liability, the analysis ... is basically the same. [T]he general rule [is] that the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product *if the supplier has reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user.*

*Pottle v. Up–Right, Inc.,* 628 A.2d 672, 675 (Me.1993) (internal quotations omitted and emphasis added).

█ Varano's proposed strict liability instruction did not include the concept that Jabar would only be liable for failure to warn of dangers of which he knew or should have known. On appeal, Varano continues to argue that strict liability does not require a breach of a duty of care. However, under Maine law it is clear that strict liability failure-to-warn cases do require breach of such a duty. *See Pottle,* 628 A.2d at 675; *Lorfano,* 569 A.2d at 196. We need not decide whether, on different facts, there might be some differences between the strict liability failure-to-warn and negligent failure-to-warn claims under Maine law; the only difference urged upon us in this case concerns whether the strict liability failure-to-warn theory must in-clude the concept that the supplier knew or should have known of the danger posed by the defect. We hold that it does, and that Varano's strict liability claim was therefore subsumed within her negligence claim. *See Pottle,* 628 A.2d at 675; *cf. Cheshire Med. Ctr.,* 49 F.3d at 35 (where plaintiff did not tender a correct instruction or object on the correct ground, we did not reach the argument that there is some difference between negligent and strict liability failure to warn theories). Consequently, we need not reach the question of whether Jabar was a seller under the Maine products liability statute.

## II.

█ Varano next argues that the district court erred in allowing Jabar to introduce evidence that he and his employees had used Splice Adhesive in the past and had never experienced problems or had complaints. Varano argues that this testimony was irrelevant, because Jabar contended at trial that his employees did not use Splice Adhesive on February 17, 1995, but only cleared ice and snow off the roof. In a similar vein, Varano argues that the nonoccurrence evidence was unduly prejudicial under Federal Rule of Evidence 403. Ordinarily, we review for abuse of discretion the district court's relevance determination and its weighing of probative value versus unfair prejudice. *See Espeaignnette v. Gene Tierney Co.,* 43 F.3d 1, 5, 10 (1st Cir.1994). Here, because Varano only objected to the evidence by a motion in limine and made no contemporaneous objection, we review for plain error. *See Clausen v. Sea–3, Inc.,* 21 F.3d 1181, 1190 (1st Cir.1994). Varano argues that the district court's denial of her motion in limine was sufficiently final to obviate the need for her to object at trial, but we see nothing in the district court's summary denial of her motion that would excuse her from the usual obligation to object at trial.

█ Varano says that since Jabar denies using the Splice on the date in ques-

tion, evidence of what happened on other occasions when he did use it is irrelevant. To the contrary, such evidence is directly relevant to Varano's claim that Jabar's use of Splice on February 17 caused her injuries. *See Espeaignnette*, 43 F.3d at 9–10 (evidence that manufacturer had received no reports of other accidents relevant to causation). This evidence tends to show that even if Jabar had used Splice on the roof, it would not have caused Varano's injuries. This reasoning is not inconsistent with Jabar's contention that his employees did not use Splice on February 17; rather, it is auxiliary to Jabar's principal theory. The district court certainly did not commit plain error in admitting evidence of prior use. Varano argues that it was unfairly prejudicial to let Jabar prove he had used Splice in the past without incident unless he conceded that he used it on February 17. This is merely a variant on the argument we have already rejected.

### III.

Varano contends that the district court erred in denying her requested res ipsa loquitur instruction.

■ A district court is bound to instruct the jury on all issues of fact raised by the evidence adduced at trial. *See Wilson v. Maritime Overseas Corp.*, 150 F.3d 1, 10 (1st Cir.1998).

The standard for determining whether a factual issue is sufficiently contested to require an instruction is identical to the standard for determining whether a factual controversy prevents the entry of judgment as a matter of law.

.    .    .    .    .

In neither situation may the court weigh the evidence, make credibility determinations, or resolve conflicts in the proof. Instead, the court must determine whether the evidence presented at trial, along with all inferences that may reasonably be drawn therefrom, could plausibly support a finding for either party on any given issue of material fact.

*Id.* Our review of the district court's decision not to instruct on an issue is plenary. *Id.* If the court erroneously fails to instruct on a material issue of fact, we still may not grant a new trial on the basis of that error if the error is harmless. *Id.* at 6.

■ The right to a res ipsa loquitur instruction is determined by Maine law in this diversity case. *See, e.g., DiPalma v. Westinghouse Elec. Corp.*, 938 F.2d 1463, 1464–65 (1st Cir.1991) (applying Rhode Island law); *Rolón–Alvarado v. Municipality of San Juan*, 1 F.3d 74, 79 (1st Cir.1993) (applying Puerto Rico law). Under Maine law, the res ipsa loquitur doctrine permits a finding of negligence in connection with an unexplained event if the plaintiff can show (1) the event was of a kind which ordinarily does not occur in the absence of negligence; (2) other responsible causes are sufficiently eliminated by the evidence; and (3) the indicated negligence is within the scope of the defendant's duty to the plaintiff. *See Poulin v. Aquaboggan Waterslide*, 567 A.2d 925, 926 (Me.1989); *Ginn v. Penobscot Co.*, 334 A.2d 874, 878, 880 (Me.1975). According to the Restatement (Second) of Torts, "It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn." Section 328D(2) (1965).

■ The district court denied the res ipsa loquitur instruction, stating:

I think the evidence does not show that this accident could happen only as a result of the conduct on the part of the defendant, and that there is no showing, no basis on which a jury could conclude there is no other explanation [than] the conduct of the defendant in bringing about the injury complained of in this case.

The evidence in this case included possible alternative explanations for the odor in the Nautica store and for Varano's medical condition. Where the record establishes possible explanations for the accident oth-

er than the defendant's negligence, res ipsa loquitur does not apply. *See Wellington Assocs., Inc. v. Capital Fire Protection Co.*, 594 A.2d 1089, 1092 (Me.1991); *see also Sheltra v. Rochefort*, 667 A.2d 868, 870 (Me.1995). The district court did not err in concluding that the evidence did not warrant submitting a res ipsa loquitur instruction to the jury.

We **affirm** the judgment of the district court.