OPINION OF THE COURT
Barry A. Cozier, J.
Plaintiffs move, pursuant to CPLR 901, for class certification *153 in this action for damages arising out of the blackout which occurred in July 1999, in the area of Manhattan north of 155th Street.
Factual Allegations
Plaintiffs and all putative class members are located in Manhattan north of 155th Street, and receive their electric power from defendants Consolidated Edison, Inc., and Consolidated Edison of New York, Inc. (collectively Con Ed). On July 6, 1999, at approximately 10:30 a.m., Con Ed cut off power to this neighborhood, during a time when the weather was unusually warm, with high temperatures of over 100 degrees Fahrenheit each day. The blackout continued, with most of the affected area remaining without power, until approximately 5:15 p.m. on July 7, 1999.
Plaintiffs contend that Con Ed ignored many recommendations of a task force established after the 1977 city-wide blackout, and that the failure to make the recommended changes contributed to the problems which caused the July 6th blackout. They further allege that Con Ed knew about the problems which caused the latest blackout, and of the potential for such an occurrence.
These consolidated class actions were first brought in July 1999. The amended complaint was filed on October 27, 1999. In it plaintiffs assert claims for breach of contract, breach of obligation to provide electricity pursuant to article 2 of the UCC, breach of duty to provide electric power, breach of duty to provide electric service pursuant to Transportation Law § 12, breach of duty to provide electric service pursuant to Public Service Law § 30 et seq., violation of General Business Law §§ 349 and 350, and seek a permanent injunction requiring Con Ed to take any and all reasonable and necessary actions to prevent the discontinuance of electrical service to plaintiffs.
Plaintiffs contend that, pursuant to the broad construction of New York’s class action statute, they are entitled to class certification. They maintain that they have fulfilled all the requirements of CPLR 901. They seek to certify a class consisting of
“all customers of defendants, including all individuals and non-governmental entities, commercial or residential, and any of their dependents, tenants, employees and other intended beneficiaries to whom defendants provided electric service in *154 Manhattan at points north of 155th Street, and who were affected by the blackout which began on July 6, 1999.” (Amended complaint 13.)
Plaintiffs also seek certification of two subclasses:
“(1) a subclass represented by plaintiffs Gonzalez, Miller, Aponte, Rodriguez, Katz, and Perez and consisting of all class members to whom defendants provided electric service for residential use and who did not have electric service for a period of time beginning July 6, 1999 as a result of defendants’ severance of power (the ‘Individual Subclass’); and “(2) a subclass represented by plaintiff Haven Parking and consisting of all class members to whom defendants provided electric service for use in connection with commercial establishments or businesses and who did not have electric service for a period of time beginning July 6, 1999 as a result of defendants’ severance of power (the ‘Commercial Subclass’).” (Amended complaint 14.)
Discussion
Before a class can be certified, the following prerequisites must be demonstrated:
“1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
“2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
“3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
“4. the representative parties will fairly and adequately protect the interests of the class; and
“5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” (CPLR 901.)
The class action statute is to be liberally construed in order to carry out the legislative intent. (Matter of Colt Indus. Shareholder Litig. v Colt Indus., 155 AD2d 154 [1st Dept 1990], affd as mod 77 NY2d 185 [1991].) Any error should be in favor of allowing the class action. (Pruitt v Rockefeller Ctr. Props., 167 AD2d 14 [1st Dept 1991].) Nonetheless, all five prerequisites must be satisfied before class action status can be granted. (Evans v City of Johnstown, 97 AD2d 1 [3d Dept 1983].)
*155 Plaintiffs have demonstrated that the class is so numerous that joinder of all members is impracticable. The number of people who were without power was over 300,000, according to Con Ed’s statistics. Thus, plaintiffs have satisfied the first element.
Plaintiffs contend that the common issues of law and fact predominate in this action, thereby satisfying the second element. Specifically, they point to the questions of whether Con Ed failed to meet its obligations to provide electric service in light of repeated warnings about the inadequacy of its system; whether Con Ed was grossly negligent in failing to provide service; and whether plaintiffs and the putative class members are entitled to an injunction requiring Con Ed to take all reasonable and necessary action to prevent future blackouts in Washington Heights.
In determining whether common questions predominate, the rules do not require identity or unanimity among class members; questions peculiar to each individual may remain after resolution of the common question. (Friar v Vanguard Holding Corp., 78 AD2d 83, 98 [2d Dept 1980].) Further, where the actual damages of each individual member may easily be computed, differing proof of actual damages among members is insufficient to defeat certification. (Vickers v Home Fed. Sav. & Loan Assn., 62 AD2d 1171, 1172 [4th Dept 1978].)
In this action, however, there is not merely an absence of identity or unanimity among class members. Rather, many issues must be addressed which are not of general concern to the putative class, but would require individual inquiry. These include the question of which of the putative class members have standing to bring an action, whether there were any legally cognizable damages, and what those damages were. The major common inquiry is whether Con Ed was grossly negligent in failing to provide service. If there were such a finding in one action, Con Ed would be bound by that determination in any subsequent actions by the doctrine of collateral estoppel. (See, Evans, supra.) Therefore, the putative class members would not have to relitigate that issue once it was resolved in one action, and this one area of inquiry, standing alone, is insufficient to warrant class certification. (Id.) Further, the damages of each putative class member are not easily computable. It would require considerable inquiry regarding not only the amount, but whether the damage was caused by the blackout. Thus, these issues, which would require individual inquiry, would predominate over the common questions. *156 (Banks v Carroll & Graf Publs., 267 AD2d 68, 69 [1st Dept 1999]; Evans, supra.) Such individualized inquiry would defeat the class action’s goal of saving judicial time and resources. (Mitchell v Barrios-Paoli, 253 AD2d 281, 292 [1st Dept 1999]; Sirica v Cellular Tel. Co., 231 AD2d 470, 471 [1st Dept 1996].)
Plaintiffs contend that the question of whether they are entitled to an injunction is one which would not require individual inquiry. However, before such an issue could be addressed, the Court would have to determine whether the putative class members all have standing to seek such relief. While plaintiffs seek to have the class consist not only of Con Ed customers, but also dependents, tenants, employees, and other beneficiaries of electrical power, they have failed to demonstrate how those people would have standing to bring the action. Con Ed’s contractual liability is limited to those with whom it has a contract. (Milliken & Co. v Consolidated Edison Co., 84 NY2d 469, 478-479 [1994].) Thus, only Con Ed’s customers would have standing to bring a contractual claim against Con Ed. The class action cannot be used to bootstrap standing which does not otherwise exist. (Murray v Empire Ins. Co., 175 AD2d 693, 695 [1st Dept 1991].) Therefore, the Court would be required to determine, on an individual basis, which members of the putative class have standing. Such an inquiry would also predominate over the common issues, and would negate the purpose of a class action.
Plaintiffs also seek recovery, pursuant to General Business Law §§ 349 and 350, based upon Con Ed’s alleged deceptive advertising practices. This, too, would require individualized inquiry to ascertain which, if any, of the putative class members were misled by Con Ed’s advertising, and whether it resulted in any damage. Again, this inquiry would predominate over any common questions. (Carnegie v H & R Block, 269 AD2d 145 [1st Dept 2000].)
Plaintiffs have also failed to demonstrate the typicality of their claims, and that they will protect the interests of the class. The named commercial plaintiff does not seek recovery for food spoilage. It is a commercial garage which seeks reimbursement for the cab fare it claims that it was obligated to give its customers when it could not provide them with their cars, as well as reimbursement for extra security. However, most of the commercial businesses in the area are not parking garages, but businesses involving food. Thus, many of the putative subclass members would seek reimbursement of the amount of food spoilage which was in excess of the $2,000 cap *157 which Con Ed placed on commercial spoiled food recovery. Thus, the named commercial plaintiff has failed to demonstrate that its claims are typical of the commercial subclass.
The named residential plaintiffs seek damages for spoiled food in excess of the $100 cap that Con Ed placed on recovery for residential food spoilage. They do not make any claim for personal injury arising out of the blackout. Plaintiffs do not make any showing regarding whether members of the putative class have personal injury claims. Were this class certified, if any members of the subclass had personal injury claims, they could inadvertently be precluded from seeking recovery on their claims under the doctrine of res judicata, by virtue of being part of this class. (Small v Lorillard Tobacco Co., 94 NY2d 43, 54-55 [1999].) Thus, in limiting their theory to nonpersonal injury, plaintiffs’ claims are inadequate to protect the interests of the putative class. (Id.)
The Court is cognizant of the relatively minor amount involved in the majority of the damage claims against Con Ed as a result of the blackout, and the resulting impracticality of pursuing individual actions for each of these minor claims. Nonetheless, these concerns cannot override the necessity of complying with the statutory prerequisites for maintaining a class action, as set forth in CPLR 901. Plaintiffs have failed to meet those prerequisites, and have thereby failed to demonstrate that class certification is warranted.
Accordingly, it is hereby ordered that the motion for class certification is denied.