HARRIS OSGOOD, as Committee of the Person and Property of ARETHUSA OSGOOD, an Incompetent Person, Appellant-Respondent, *v.* D. W. WINKELMAN COMPANY, INC., Appellant, EASTERN ROCK PRODUCTS, INC., Respondent-Appellant, and WARREN H. FROELICK, Respondent.

JOE SCHAPIRO, as Executor of JAY BRENNAN, Deceased, Appellant-Respondent, *v.* D. W. WINKELMAN COMPANY, INC., et al., Respondents-Appellants, and WARREN H. FROELICK, Respondent.

Third Department, March 9, 1949.

*Joe Schapiro* for appellants-respondents.

*Brown, Mangin & O'Connor,* attorneys (*Wilfreda B. Stone* with him on the brief), for D. W. Winkelman Company, Inc., appellant.

*Coville, Nemeti & Zeller,* attorneys (*Howard A. Zeller* of counsel), for Eastern Rock Products, Inc., respondent-appellant.

*Higgins, Kelson, O'Hara & Young* for Warren H. Froelick, respondent.

HEFFERNAN, J. The actions involved here arose out of an automobile accident which occurred at about eight o'clock in the evening of September 24, 1946, on a State highway known as Route 13 which runs in a northerly and southerly direction between the village of Canastota and South Bay in Madison County.

At the time of the accident the highway was under construction pursuant to the terms of a contract between defendant, D. W. Winkelman Company, Inc. (hereafter referred to as Winkelman) and the State of New York. The work under this contract commenced on June 3, 1946. In order to complete its contract for the reconstruction of the highway, Winkelman entered into a contract with defendant, The Eastern Rock Products, Inc. (hereafter referred to as Eastern) for laying the top course on the road.

Eastern commenced its work on August 27, 1946. A paving machine or spreader, owned by Eastern was used by it in the

performance of its contract. This machine was about eleven feet wide and had sleeves attached to it approximately four feet in width. On the day of the accident the machine had been dismantled for the purpose of making repairs thereto. It was parked on the easterly side of the highway which was twenty-two feet in width, and occupied the entire easterly side and part of the westerly side of the road.

At about 7:45 P.M. in the evening of the day of the accident an automobile owned and operated by defendant Froelick in which Miss Osgood, the incompetent, and Jay Brennan, were passengers, left Canastota and drove north on the road under construction, their destination being South Bay where they planned to have dinner. A short distance north of Canastota the Froelick car collided with the paving machine as a result of which the two passengers were injured.

Shortly after the accident Miss Osgood was adjudicated insane and Harris Osgood, was appointed committee of her person and property and in that capacity he instituted an action for the recovery of the damages sustained by his ward against Winkelman, Eastern and Froelick on the theory that their combined negligence caused the accident. In addition to other items of damage the complaint alleges that as a result of the accident Miss Osgood became mentally incompetent.

Brennan commenced an action against the same defendants for damages in which he also charged them with negligence causing his injuries. During the pendency of the latter action Brennan died from causes unrelated to the accident and his executor has been substituted as plaintiff.

Each defendant interposed an answer denying the allegations of negligence. In its answer Winkelman also made a cross claim against Eastern in which it demanded judgment over against the latter in the event that Winkelman was held liable, basing such claim on the assertion that Eastern was the active tort feasor.

After a trial of the issues the jury rendered a verdict in the Osgood case in favor of plaintiff and against defendant Winkelman and defendant Eastern, in the sum of $25,000 and a verdict of no cause of action in favor of defendant Froelick.

In the Brennan case the jury returned a verdict in favor of plaintiff and against defendants Winkelman and Eastern, in the sum of $2,500 and a verdict of no cause of action in favor of defendant Froelick.

The trial court denied motions by counsel for defendants Winkelman and Eastern to set the verdicts aside and also denied

the motion of Winkelman for a cross judgment against Eastern and granted Eastern's motion to dismiss that claim.

Both plaintiffs moved to set aside the verdict in favor of Froelick and in the Brennan case plaintiff asked to have that verdict set aside as inadequate. These motions were likewise denied.

From the adverse judgments and orders, to which we have referred, defendants Winkelman and Eastern and both plaintiffs, have come to this court.

On these appeals the main contentions of the corporate defendants are that the verdicts against them are against the weight of the evidence and that the damages awarded in the Osgood case are excessive. Winkelman also strenuously urges that if liability be established against it as to the plaintiffs in such event it is entitled to judgment over against Eastern on its cross complaint.

On the question of negligence upon the part of the corporate defendants there is ample proof in the record from which the jury might reasonably have found that at the time of the accident the night was dark, cloudy and misty; that the pavement was wet; that there were no lights on the paving machine which obstructed the highway; that there were no signs, lights or flares in the immediate vicinity thereof; that no watchman was present and that defendants failed to adequately warn those lawfully using the highway of any obstruction to be encountered thereon.

On this proof the jury was justified in finding that the accident was solely the result of negligence of the corporate defendants in creating and maintaining a dangerous obstruction in the highway in omitting to place warning signs and adequate lights on the paving machine and in failing to properly guard the equipment so as not to imperil the lives and limbs of travelers on the highway.

There is nothing in the record from which we may say as a matter of law that defendant Froelick was careless or negligent.

In our opinion the verdict of the jury on the question of negligence is abundantly supported by evidence which is neither incredible nor insufficient as a matter of law and consequently it is conclusive.

Coming now to the controversy between the corporate defendants an interesting question is presented.

The agreement between Winkelman and Eastern relating to the work is contained in a letter dated September 5, 1946, written by the former to the latter, the pertinent provisions of which are:

" As you know, we have a contract with the State of New York known and designated as R. C. 45–75 in Madison County for reconstruction of Canastota-South Bay State Highway No. 812. This contract, in addition to other work, calls for completion of top course B.M. M.M. Opt., otherwise designated in the State specification as Item No. A53T.

" You are to complete this item according to all specifications called for in the State contracts, plans, etc., at the price of Five Dollars and Ninety Cents ($5.90) per ton.

" In view of the fact that it will be necessary for any employees used by you to be placed on our pay rolls, we will draw our own pay roll checks, pay your men and back charge the amount of the pay roll plus insurance charges and other taxes (except withholding) against the amount due you.

" It is understood that there will be approximately seventy-three hundred (7300) tons, but this amount is subject to increase or decrease with the consequent increase or decrease in the amount received by you."

Eastern agreed to perform its part of the work in accordance with the terms of this letter. It delivered on the job the paving machine, a roller and sufficient material to complete the work.

Under the terms of Winkelman's contract with the State no subcontract could be made without the latter's approval.

Prior to the writing of the letter referred to Winkelman requested the State to permit it to sublet that part of the work. The State refused and notified Winkelman to that effect by letter dated August 27, 1946. At the time the letter from the State to Winkelman was received Eastern was already on the job pursuant to the agreement between these two defendants. Prior to the completion of Eastern's part of the work the accident happened.

The proof indicates that the employees engaged in laying the black top, including those operating the paving machine, were on Winkelman's payroll; that the supervisor in charge of the work was an employee of Winkelman and he gave instructions as to where the black top was to be placed.

Winkelman's contract with the State contained comprehensive provisions as to the contractor's liability and responsibility. Among other provisions Winkelman assumed responsibility for damages to person or property accruing during the progress of the work due to its own negligence or the negligence of its agents or employees. It agreed to erect suitable barricades and place red lights in front of the work whenever necessary to protect the traveling public. Detailed specifications in the

contract required Winkelman to erect suitable signs for the direction and protection of traffic and at points of hazard to erect barriers or guide rails. The contractor was also required to provide in addition to these barriers watchmen and flagmen for the protection and maintenance of traffic. It also required Winkelman to provide at least one night man whose duty it was to continuously patrol the road where the work was in progress and to see that all signs were in place and all lights lighted.

We are satisfied that the jury was justified in finding that Eastern was negligent in leaving the paving machine on the highway unlighted; and that Winkelman was negligent in failing to give proper warning to users of the highway and to erect guards, barricades and safeguards for their protection. The failure of Winkelman to properly supervise the work was a negligent act coincident with Eastern's negligence. The duty of Winkelman was nondelegable. When one undertakes work in a public highway which, unless carefully done, will create conditions which are dangerous to members of the public using the highway he is under a duty to use requisite care. That duty cannot be delegated. (*Rohlfs* v. *Weil*, 271 N. Y. 444; *Appel* v. *Muller*, 262 N. Y. 278; *Boylhart* v. *DiMarco & Reimann, Inc.*, 270 N. Y. 217; *Ramsey* v. *National Contr. Co.*, 49 App. Div. 11.)

One who entrusts work to another, but who retains control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise his control with reasonable care (*Hanley* v. *Central Sav. Bank*, 255 App. Div. 542, affd. 280 N. Y. 734).

The duty of Winkelman not to create a source of danger on the public highway nor to permit one to be created by another under its control or with which it had contractual relationship are identical. In either case Winkelman's duty is active and primary.

It should also be noted that the agreement between Winkelman and Eastern only required the latter " to complete this item ", referring to the completion of the top course. Eastern agreed to do only that specific work. It did not assume the liabilities and duties of Winkelman as general contractor as to the erection or maintenance of proper and suitable safeguards, lights, barriers or a night watchman. That duty at all times remained on Winkelman. Under general principles of law and also under its contract with the State Winkelman had a duty to guard against any dangerous conditions in the high-

way. That duty was separate and distinct from any duty that rested on Eastern. Insofar as the duty was created by general principles of law, it could not be delegated by Winkelman. Insofar as it was created by the State contract it was not transferred to or assumed by Eastern; nor did Eastern by its arrangement agree to indemnify Winkelman for the breach of that agreement.

We do not question the correctness of the rule of law to which counsel for Winkelman has called our attention that where a plaintiff obtains a judgment against one who has been merely passively negligent the latter is entitled to be indemnified against the active tort feasor. That doctrine finds support in many authorities (*Oceanic Steam Navigation Co.* v. *Compania Transatlantica Espanola,* 134 N. Y. 461; *Phœnix Bridge Co.* v. *Creem,* 102 App. Div. 354, affd. 185 N. Y. 580; *Dunn* v. *Uvalde Asphalt Paving Co.,* 175 N. Y. 214; *Schwartz* v. *Merola Bros. Constr. Corp.,* 290 N. Y. 145).

That rule however has no application to the facts in this case. Here both defendants were guilty of active negligence.

To sustain its contention that it was not an active wrongdoer Winkelman has directed our attention to the following excerpt from the Trial Judge's charge which it asserts is the law of the case: " The Eastern Rock Products was in the active work at this particular time. They were doing that portion of the contract they were hired to do, so that the negligence, if any, of the Winkelman Company was rather what we call passive negligence in not having seen that the other concern properly safeguarded the machine, assuming you find it was improperly safeguarded, or not properly safeguarded."

Undoubtedly there are some inadvertent statements in the quotation. However, the answer to Winkelman's argument is that the jury was not instructed on the degrees of culpability as between these two defendants. In fact before the judge charged the jury he announced that the claim for cross judgment would be decided by him as a question of law. Evidently the language used by him in the quoted part of his charge was simply for the purpose of explaining to the jury that the verdict should be identical as to these two defendants. The jury was not told to determine any issue between them, and consequently, it was unnecessary for it to distinguish between active and passive negligence. In fact the jury could have found that Winkelman was guilty of both passive and active negligence.

The only remaining question relates to the amount of the

awards. On the day of the accident Miss Osgood was twenty-three years of age. As a result of the accident, in addition to numerous bruises and lacerations on various parts of her body, she sustained a deep laceration on her cheek which penetrated through the skin practically into her mouth; due to the extent of the laceration the mucous membrane of the mouth was the only thing intact. After her discharge from the hospital her acquaintances referred to her as "scarface". Her physician testified that she became melancholy, excited and irritable and suffered from delusions of the persecution type which resulted in her commitment to the Syracuse Psychopathic Hospital and later to Marcy State Hospital. She was an inmate of these institutions until June, 1947, when she was placed on parole. At the time of the trial she was still mentally incompetent and unable to appear as a witness. Her physician and an eminent psychiatrist diagnosed her condition as manic depressive psychosis, manic type, and both testified that the accident was the precipitating factor which produced her mental condition. The defendants made no attempt to impeach or contradict the medical testimony. Certainly under these circumstances this court would not be justified in disturbing the verdict in favor of this unfortunate young woman.

In the Brennan case the proof discloses that he sustained a comminuted fracture of the distal third portion of the right femur with medical posterior displacement of the distal fragments. He was hospitalized until the following April. On the 13th of that month he refractured the leg. It is doubtful if this condition was the result of the accident.

There is proof in the record that Brennan was in poor physical condition prior to the accident. Many years before he had an operation to correct a dislocated hip. He was compelled to walk on the ball of his foot. He also suffered from varicose veins and varicose ulcers in his lower legs.

Over plaintiff's objection the will of decedent was offered and received in evidence from which it appeared that the incompetent's mother was the beneficiary. The reception in evidence of this document was proper only to show a possible interest on the part of the husband in the outcome of the litigation. Other evidence, based on rumor and hearsay, was introduced to show that the incompetent's parents and other close relatives were leading lives not in conformity with the decalogue. No doubt this proof was offered for the purpose of creating prejudice in the minds of the jurors. This evidence should have been rejected by the Trial Judge.

Notwithstanding what has been said we are loath to interfere with this verdict. We have concluded not to substitute our judgment for that of the jury.

The judgments and orders against the corporate defendants are affirmed with one bill of costs and disbursements. The order denying the motion of defendant Winkelman for cross judgment against defendant Eastern is affirmed, without costs. The judgments and orders in favor of defendant Froelick are affirmed, without costs and likewise the order denying plaintiffs' motion to set the verdict in the Brennan case aside is affirmed, without costs.

FOSTER, P. J., DEYO, SANTRY and BERGAN, JJ., concur.

Judgments and orders against the corporate defendants affirmed, with one bill of costs and disbursements. The order denying the motion of defendant Winkelman for cross judgment against defendant Eastern affirmed, without costs. Judgments and orders in favor of defendant Froelick affirmed, without costs and likewise the order denying plaintiffs' motion to set the verdict in the Brennan case aside affirmed, without costs.