JOSEPH CARDINAL, Doing Business as CARDINAL ENGINEERING COMPANY, Plaintiff, *v.* UNITED STATES CASUALTY COMPANY, Defendant.

Supreme Court, Trial Term, Kings County, June 1, 1949.

*Thomas A. McDonald* for plaintiff.

*Frederick Mellor* for defendant.

F. E. JOHNSON, J. The issues here are questions of law, most of the facts having been stipulated; the others are not really open to question.

Plaintiff sues defendant upon a policy of insurance issued to him in November, 1944, at a time when he, to the knowledge of defendant, had a State compensation policy in effect covering his work and his employees; the policy sued upon was issued incident to work he was doing, or going to do, upon a Government ship; in view of the statute in this State there can be no doubt that it was not intended to secure him in the manner in which his compensation policy protected him, aside from the probable inability of this defendant to issue a policy of that nature. There is no circumstance in the case permitting the inference that he was to be protected thereby against claims made *against him by injured employees*.

What he was *not* protected against by this policy, and what the defendant was *not* to be liable for under this policy, was not left to inference by reason of vague language; defendant's non-liability was emphasized and particularized by language which explained what claims were *not* covered; they were excepted from defendant's responsibility thus: '' This policy does not apply \* \* \* to bodily injury to or death of any employee of the insured while engaged in the business of the insured, or to any obligation for which the insured may be held liable under any Workmen's Compensation Law.''

In the State courts this plaintiff could never have been pursued by any employee so injured (unless the compensation policy had lapsed) though, in the event of such lapsing, the employee could sue this plaintiff in the State court and he could not look to defendant for protection because of the foregoing exception. The best interpretation, in favor of defendant, that this language is susceptible of is that if at any time, by reason of failure to keep the compensation insurance policy in force, this plaintiff became *directly subject to suit or claim made against him by an injured, etc., employee,* he could not look to this defendant for protection or reimbursement; any wider meaning seems unnatural, because so long as that compensation policy *was* in force it was legally impossible for any employee victim of the

plaintiff's negligence on that work *to sue this plaintiff*. The exception of such claims in this present policy seems, upon its face, by reason of the terse language, an exception against a claim that could not *possibly* be made under our law so long as the known compensation policy continued; to read into that exception the understanding that such employee claims could be made only in event of the lapse of the compensation policy is necessary to give that exception any sense. As thus interpreted it has meaning, *but has never been applicable to the relationship between this plaintiff and this defendant because it is not suggested that at any of the times in question the compensation policy ceased to be in force.* It seems, therefore, that the exception is irrelevant to this suit because the plaintiff *never was sued or suable by any injured, etc., employee* who came within the description contained in that exception.

What did happen was that injured employees, instead of vainly suing the plaintiff employer, sued the owner of the ship (the United States Government); whether that suit was such in form, or was a proceeding in the Admiralty Court, may be ignored as unimportant; in substance it may be described as the equivalent of a *suit,* being a *claim* presented in a proper forum for adjudication into a money judgment and based upon alleged *negligence or breach of duty by the United States Government.* Up to that moment there had been no attempt by *any injured, etc., employee to sue this plaintiff,* or make any claim against *him;* thereafter at no time did any of those claimants *sue this plaintiff or make any claim against him, therein or otherwise.*

The Government, perhaps acting under provisions like section 193 *et seq.* of the Civil Practice Act sought to bring plaintiff employer into that proceeding or suit by notice; whether it was by some paper that amounted to a notice of " vouching in ", or whether it was a demand to " come in and defend ", it was nevertheless a warning to the plaintiff herein that the Government *would look to him to either exonerate it from liability or save it harmless,* evidently on the theory that there was no *active* negligence on the part of the Government; that being only *passively* negligent it would have the right to demand that this plaintiff employer, who personally or by agent was charged with *active* negligence, should *save it harmless or reimburse it,* or otherwise assume the consequences *to it* of that pending proceeding or suit.

Defendant during this trial has chosen to give the name of " public liability " to the contract now sued upon, but there is no basis whatever for that in the proof. This is merely the

defendant's attempt to characterize and interpret its own contract by giving it a helpful private name *which does not appear anywhere in the policy;* in fact, on the back of the policy, which is the place where one might well expect a description of it to appear, there is the usual backing, showing the seal of the defendant at the top, the policy number, the defendant's name, address, etc., and then between two crossbars where a description might well be inserted appears " Miscellaneous liability policy (payroll basis)."

It was taken out in November, 1944, to expire November, 1945, and if it was intended only to protect against accidents to the *public,* it is interesting to note that it is full of details about not only the nature of the plaintiff's work and the place where it was to be done, but " clerical, office employees, salesmen, collectors or messengers outside, stevedoring-n.o.c. ", together with details about the rate per hundred dollars of *their remuneration* and their estimated total annual remuneration. The attempt, therefore, to call this a *public* liability policy seems like wishful thinking and an attempt to change the contract by giving to it a meaning and status that plaintiff never agreed to, but which defendant now thinks desirable to attach to it.

The affirmative promises of the defendant in that policy are also definite: " 1. Coverage,— Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

As to the defense of actions against the insured, " Insuring Agreement " No. 11 reads:

" It is further agreed that *as respects insurance afforded by this policy* the company shall

" (a) defend in his name and behalf any suit against the insured alleging such injury and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * * "

When the plaintiff, confronted in that Federal proceeding with the Government's demand to come in, etc., turned to this defendant, and under this policy made proper demands that it either protect him, or intervene, or adjust, or otherwise live up to its contract, defendant refused to have anything to do with those proceedings.

The Government apparently worked out a settlement among these *claimants against itself;* there is nothing in this proof to indicate that the plaintiff alone herein worked out any settlement or paid any money *to any of those claimants;* the situation shown by the exhibits, etc., herein, and reiterated by statement of defendant's counsel in the minutes of the second phase of the trial of this present suit, was that *the Government settled with these claimants* and that *plaintiff gave a share* of the gross *to the Government* so that the *Government could settle* with these plaintiffs. It is nowhere suggested that the plaintiff's contribution went *otherwise than to the Government directly;* this was proper, because it was the *Government that was making a claim against the plaintiff,* and that claim was settled for less than the injured claimants received.

None of these claimants had any status or right therein to claim against this *plaintiff,* because of his compensation policy, and they were relegated *wholly* to their State remedy *as to him.* At no time did the relationship between those suing injured employees and this plaintiff change, and at all times the continuance of that State compensation policy forbade any such claims being made *directly against this plaintiff* by any of those claimants. *They were not forbidden to sue the Government* or *claim against it, and a third party situation that might arise therefrom did not in any way make it possible for them to become creditors of this plaintiff.* No judgment could have been rendered against this plaintiff in those Eastern District of New York Federal proceedings, since they conformed to our Civil Practice Act.

There might be, and probably would be, a liability over of this plaintiff to the Government for any claims that were cast into judgment against the Government in those Federal proceedings, *but the liability this plaintiff would thereupon be under to the Government was not a liability arising under the compensation law of this State.* It was not a direct liability by reason of the injury to *them,* but was a collateral liability *in quasi contract growing out of the relationship between the Government and the plaintiff.*

The language of this policy drawn by this defendant cannot be extended for its benefit, but must be read not only as it is written, but if there is any question about its meaning, the benefit thereof can be obtained only by the plaintiff.

The *potential* suit by the Government, made in the demand that it served in the District Court actions, was clearly within the coverage, or, at least, was clearly *not a claim within the*

*exceptions.* The exceptions protect the defendant against having to respond to direct claims made *against this employer by injured employees.* Those injured employees, being relegated completely to their existing compensation remedy, the exception covered a *theoretical* but *completely impossible situation,* one which the law forbade to exist. How could this plaintiff ever be lawfully *sued,* or have a claim *presented against him,* by an injured employee who was hurt while engaged in the business of this plaintiff? How could this plaintiff be sued or held liable on any obligation for which he could be "held liable under any Workmen's Compensation Law" while his State policy was in force? How can the Government's claim be said to be such a claim?

The settlements and *plaintiff's contribution to the Government* which were approved by this defendant establish the measure of its liability. On the foregoing see: *Osgood* v. *Winkelman Co.* (274 App. Div. 694, headnote point No. 6, on nature of Government's claim against this plaintiff); *Chizik* v. *Fuchs* (193 Misc. 297); *Treadwell Co.* v. *United States Fidelity & Guar. Co.* (275 N. Y. 158); *Westchester Lighting Co.* v. *Westchester County Small Estates Corp.* (278 N. Y. 175).

The motion to dismiss must be denied, and judgment rendered for the plaintiff for the amount sued for, with interest and costs.