[729 NYS2d 545]

NED S. CHURCH, an Infant, by WENDY SMITH, His Guardian ad Litem, et al., Respondents, v CALLANAN INDUSTRIES, INC., Appellant, SAN JUAN CONSTRUCTION AND SALES COMPANY, Appellant-Respondent, and CLOUGH, HARBOUR & ASSOCIATES, Respondent. (And a Third-Party Action.)

Third Department, July 5, 2001

## APPEARANCES OF COUNSEL

*Ryan & Smallacombe, L. L. P.,* Albany (*Melissa J. Smallacombe* of counsel), for appellant.

*D'Agostino, Krackeler, Baynes & Maguire, P. C.,* Menands (*Arete K. Sprio* of counsel), for appellant-respondent.

*Thorn, Gershon, Towne, Tymann & Bonanni, L. L. P.,* Albany (*Arthur H. Thorn* of counsel), for Ned S. Church and others, respondents.

*Lemery, MacKrell & Greisler, L. L. C.,* Albany (*Daniel J. Tyson* of counsel), for Clough, Harbour & Associates, respondent.

## OPINION OF THE COURT

MERCURE, J. P.

In this action to recover for injuries sustained in a December 26, 1992 motor vehicle accident on the Thruway, plaintiffs seek to impose tort liability against a subcontractor based upon its alleged failure to install the full length of guiderail specified in a State construction contract that was completed, inspected, accepted and paid for years earlier. We conclude that plaintiffs' theory of liability against such a party expands the zone of duty beyond acceptable public policy limits and that Supreme Court therefore erred in denying the motion for summary judgment dismissing the complaint against it.

The essential facts as alleged by plaintiffs, and credited for the purpose of this appeal, may be briefly stated. In April 1985, defendant Callanan Industries, Inc.[1] contracted with the Thruway Authority to, among other things, install new guiderails along a portion of the Thruway in Albany County and Greene County. Callanan subsequently subcontracted the guiderail installation work to defendant San Juan Construction and Sales Company (hereinafter defendant). Although the guiderail portion of the project called for the removal of 275 feet of existing guiderail in the vicinity of mile marker 132.7 and the installation of 312.5 feet of new guiderail in its place, it appears that defendant installed only 212.5 feet of guiderail at that location. The Thruway Authority's engineering inspector, defendant Clough, Harbour & Associates (hereinafter

---

[1]. During the pendency of this appeal, plaintiffs settled their action against Callanan. We shall therefore limit our consideration to the propriety of Supreme Court's order as it relates to defendant San Juan Construction and Sales Company.

Clough Harbour),[2] nonetheless advised the Thruway Authority that Callanan had completed the project according to the contract specifications, and the Thruway Authority made final payment to Callanan in 1987.

On December 26, 1992, third-party defendant, Barbara S. Church, was driving southbound on the Thruway with her husband, plaintiff Gilbert P. Church, and their nine-year-old son, plaintiff Ned S. Church. At approximately 3:00 P.M., while traveling in the area where the subject guiderail project had been performed by defendant, Barbara Church fell asleep at the wheel. The vehicle thereupon moved onto the right-side shoulder of the road, struck the concrete anchor at the northern end of the guiderail, slid across 200 feet of grass, became airborne and eventually crashed into the bottom of an embankment. Although Barbara Church and Gilbert Church suffered relatively minor injuries, their son was rendered a quadriplegic as a result of the collision. Plaintiffs assert, and we will assume for the purpose of our analysis, that if defendant had installed the full length of guiderail called for in the contract, plaintiffs' injuries would have been substantially diminished.

In support of its contention that Supreme Court erred in denying its summary judgment motion, defendant relies upon a number of Court of Appeals cases for the proposition that it owed plaintiffs no duty of care (*see, e.g., Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220; *Strauss v Belle Realty Co.*, 65 NY2d 399; *Moch Co. v Rensselaer Water Co.*, 247 NY 160). For their part, plaintiffs predicate their defense of the motion on the products liability principle, embodied within PJI3d 2:130 (2001) (*see*, 1A NY PJI3d 604-606 [2001]), that a building or construction contractor is liable for injury or damage to a third person as a result of the condition of the work, even after completion of the work and its acceptance by the owner, where it is reasonably foreseeable that a third person would be injured as a result of the contractor's negligent performance of the work.[3] This so-called "modern rule" (*see*, Annotation, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person*

---

2. Plaintiffs have also settled their action against Clough Harbour.

3. To the exent that plaintiffs rely on a products liability theory, however, the complaint fails to state a cause of action because, in constructing the guiderail, defendant did not produce a product for sale or place a product in the stream of commerce (*see, Van Iderstine v Lane Pipe Corp.*, 89 AD2d 459, *lv dismissed* 58 NY2d 610).

*Occurring After Completion and Acceptance of Work; "Foresee-ability" or "Modern" Rule,* 75 ALR5th 413) has support in several New York cases, including *Colonno v Executive I Assocs.* (228 AD2d 859), *Marrero v Marsico* (218 AD2d 226), *Sternbach v Cornell Univ.* (162 AD2d 922), *Roberts v MacFarland Constr. Cos.* (102 AD2d 981) and *Cubito v Kreisberg* (69 AD2d 738, *affd* 51 NY2d 900). Notably, the "modern rule" merely dictates that an owner's approval of work performed by a contractor does not, in and of itself, absolve that contractor of liability to a third party injured subsequent to such acceptance. In fact, defendant makes no argument to the contrary. Further, to the extent that the theory espoused by plaintiffs remains grounded in negligence, defendant's duty of care is an essential element of the cause of action (*see,* Annotation, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work; "Foreseeability" or "Modern" Rule,* 75 ALR5th 413, 438, § 2 [a]).

There can be no question that New York courts have long struggled to define the appropriate boundaries of third-party tort liability arising out of the breach of a contract. Although the issue appears to have arisen most frequently in connection with ongoing service contracts (*see, e.g., Milliken & Co. v Consolidated Edison Co.,* 84 NY2d 469 [contract to supply electricity]; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579, *supra* [contract to perform a hospital's nonmedical preventative, safety inspection and repair service functions]; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 76 NY2d 220, *supra* [contracts for periodic inspection of sprinkler system and for installation and maintenance of central station fire alarm system]; *Strauss v Belle Realty Co.,* 65 NY2d 399, *supra* [contract to supply electricity]; *Moch Co. v Rensselaer Water Co.,* 247 NY 160, *supra* [contract to provide water]), our reading of those cases evidences no intention to so limit them, and the issue has occasionally arisen in connection with construction contracts (*see, e.g., Inman v Binghamton Hous. Auth.,* 3 NY2d 137 [construction of apartment building]; *Koeppel v City of New York,* 200 AD2d 477 [construction of sidewalk]; *Einhorn v Seeley,* 136 AD2d 122] [installation of lock]).

Quite recently, the Court of Appeals gave extensive consideration to the issue of duty of care in connection with an action to recover damages from firearms manufacturers resulting from individuals' illegal use of handguns (*see, Hamilton v Beretta U.S.A. Corp.,* 96 NY2d 222) and delineated the governing standard in the following terms:

"The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff? Courts traditionally 'fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability' * * *. Thus, in determining whether a duty exists, 'courts must be mindful of the precedential, and consequential, future effects of their rulings, and "limit the legal consequences of wrongs to a controllable degree"' * * *.

"Foreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist * * *. The injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm' * * *. That is required in order to avoid subjecting an actor 'to limitless liability to an indeterminate class of persons conceivably injured by any negligence in that act' * * *. Moreover, any extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs" (*id.*, at 232, quoting *Lauer v City of New York*, 95 NY2d 95, 100; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 586, *supra*; *Eiseman v State of New York*, 70 NY2d 175, 188 [citations omitted]).

We believe that certain essential considerations can be gleaned from the existing authority which will assist in determining whether a duty of care was owed by defendant in this case. First, although apparently no longer constituting an absolute bar (*see, Roberts v MacFarland Constr. Cos.*, 102 AD2d 981, *supra*; *but see, Colonno v Executive I Assocs.*, 228 AD2d 859, *supra*; *Sternbach v Cornell Univ.*, 162 AD2d 922, *supra*), the fact that the defect giving rise to a plaintiff's injury was open and apparent is an important consideration mitigating against the imposition of third-party liability (*see, Inman v Binghamton Hous. Auth.*, 3 NY2d 137, 145-146, *supra*; *Di Perna v Roman Catholic Diocese*, 30 AD2d 249).

Second, liability will not be imposed in favor of a class of plaintiffs that either encompasses so many or is so remote as to exceed "controllable limits" (*Strauss v Belle Realty Co.*, 65 NY2d 399, 405, *supra; see, Waters v New York City Hous. Auth.*, 69 NY2d 225, 230). Thus, in cases involving liability arising out of the operation or ownership of real property, the permissible range of plaintiffs has been strictly limited to tenants, employees and "others who might reasonably be expected to be on the premises" (*Waters v New York City Hous. Auth., supra*, at 230; *see, Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, *supra* [liability in favor of employee]; *Colonno v Executive I Assocs., supra* [same]; *Roberts v MacFarland Constr. Cos., supra* [same]; *see also, White v Guarente*, 43 NY2d 356, 361 [liability against accountant in favor of limited partners, "a known group possessed of vested rights, marked by a definable limit and made up of certain components"]; *but see, Hamilton v Beretta U.S.A. Corp., supra* [no liability in favor of shooting victims]; *Milliken & Co. v Consolidated Edison Co.*, 84 NY2d 469, *supra* [no liability in favor of tenant of utility customer]; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, *supra* [no liability in favor of tenant of sprinkler inspection and alarm service customer]; *Strauss v Belle Realty Co., supra* [no liability in favor of tenant of utility customer]).

For essentially the same reasons, there must be a reasonable temporal proximity between the performance of the contractual obligation and the resulting injury. For instance, in *Palka v Servicemaster Mgt. Servs. Corp. (supra)*, one of the very few cases in which the Court of Appeals has imposed third-party liability, the contract at issue was a continuing one and was, in fact, executory at the time of the plaintiff's injury (*but see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra* [no duty of care despite the existence of an executory service contract]). Finally, the Court of Appeals has repeatedly held that "injured noncontracting parties must show that the 'performance of contractual obligation[s] [between others] has induced detrimental reliance [by them] on continued performance and inaction would result not "merely in withholding a benefit, but positively or actively in working an injury" ' " (*Palka v Servicemaster Mgt. Servs. Corp., supra*, at 587, quoting *Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra*, at 226, quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 167, *supra*).

Applying the foregoing principles to the fact patterns presented in the cases relied upon by plaintiffs may give some insight into the reason for their failure to give any consideration

to the applicable duty of care. For instance, in *Inman v Binghamton Hous. Auth.* (3 NY2d 137, *supra*), the injured party was a child of a tenant of the defendant, who lived in the building where the injury occurred. Similarly, in *Roberts v MacFarland Constr. Cos.* (102 AD2d 981, *supra*) and *Colonno v Executive I Assocs.* (228 AD2d 859, *supra*), the property upon which the plaintiffs were injured was their workplace. Finally, in *English v City of Albany* (235 AD2d 977), the work giving rise to the plaintiff's injury had not yet been completed at the time of the underlying accident. We can only assume that, because the plaintiff in each of those cases fell so obviously within the orbit of duty, the issue was never raised.

In sharp contrast, every one of the identified considerations militates strongly against imposing a duty of care in this case. Obviously, the subject guiderail's overall length and position relative to the physical hazard giving rise to plaintiffs' injuries and, thus, the extent to which the guiderail would—or would not—likely guard against that hazard, was readily observable at all relevant times, i.e., when Clough Harbour inspected and approved the work, when the State accepted and paid for it and in the intervening years when the length and location of the guiderail was plainly visible to passing State maintenance and repair crews, State engineers and the traveling public. Nevertheless, the "inherently dangerous condition" attested to by plaintiffs' experts apparently escaped the notice of all of them.

Further, the class of potential plaintiffs is virtually limitless, as it would consist of all motorists traveling on the subject portion of the Thruway in perpetuity, or at least until such time as some other contracting party was to perform a new contract for the installation of guiderail at the same location. Here, the accident giving rise to this action occurred more than five years after Callanan received final payment. Similarly, from defendant's perspective, the class of potential plaintiffs is a very remote one. It is the State, of course, that has the primary duty of care to motorists utilizing its highways. In this case, defendant is a full three links removed from the State in the causal chain (*see, Hamilton v Beretta U.S.A. Corp., supra*, at 234). That is, in order for the public to be put at risk by defendant's failure to properly perform its contractual obligation, it was required that three additional parties, i.e., Callanan, Clough Harbour and the State itself, also fail to recognize that the guiderail deviated from contract specifications and that the deviation posed a danger to the traveling public.

Finally, there has been no showing that defendant's performance of the underlying contract induced any detrimental reliance on the part of the State or any party to this action. In our view, to impose a duty of care in this case would threaten to expose defendant and similarly situated highway contractors "to a liability in an indeterminate amount for an indeterminate time to an indeterminate class" (*Ultramares Corp. v Touche*, 255 NY 170, 179; *see, Credit Alliance Corp. v Andersen & Co.*, 65 NY2d 536, 548, *mot to amend remittitur granted* 66 NY2d 812). As a matter of public policy, we are unwilling to establish such a rule of law.

A few points raised by the dissent warrant brief discussion. First, it is our view that the dissent does not benefit from the line of cases derived from the Court of Appeals decision in *Boylhart v DiMarco & Reimann* (270 NY 217) and standing for the proposition that an owner or contractor has a nondelegable duty to "use requisite care" in connection with work undertaken on a public highway (*id.*, at 221). Although useful in the effort to impose liability upon Callanan, which has already settled with plaintiffs, and the State, against which a parallel action is apparently pending, those cases appear to have nothing at all to do with the tort liability of a subcontractor, the party representing the final link in the chain of liability and thus having no one to delegate to.

Second, by indicating that passing motorists could not be aware of the defect giving rise to plaintiffs' injuries without knowing both the length of guiderail called for in the contract and the precise measure of guiderail that was actually installed, the dissent improperly equates defendant's apparent breach of its subcontract, which of itself could impose nothing more than contract liability, with its asserted failure to conform to applicable design guidelines and standards, which implicate liability in negligence. Although the contract specifications may have fixed the outer boundary of defendant's potential tort liability, the actual claim of negligence against defendant is necessarily founded upon its failure to install guiderail in a location where guiderail was reasonably required in order to provide protection against existing hazards, identified by plaintiffs' experts as a bridge wingwall and a nontraversable slope to an underpassing road. We reiterate that the existence of those hazards and the absence of guiderail necessary to protect motorists from them was clearly visible to a multitude of passing State maintenance and repair personnel, State

engineers and traveling motorists over the several years preceding plaintiffs' accident.

In view of the foregoing, we conclude that Supreme Court erred in denying defendant's summary judgment motion. Its order should therefore be reversed to that extent and the complaint dismissed against defendant. The parties' remaining contentions have either been considered and found to be lacking in merit or need not be considered in view of our legal determination that defendant owed plaintiffs no duty of care.

LAHTINEN, J. (dissenting). We respectfully dissent. As the majority recognizes, "[t]he threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?" (*Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232). The answer in this case is yes. According to the Court of Appeals, "[w]hen one undertakes work in a public highway which, unless carefully done, will create conditions which are dangerous to members of the public using the highway, in the usual and ordinary manner, he is under a duty to use requisite care. That duty cannot be delegated" (*Boylhart v DiMarco & Reimann*, 270 NY 217, 221; *see, Tytell v Battery Beer Distrib.*, 202 AD2d 226, 227; *Osgood v Winkelman Co.*, 274 App Div 694, 700, *mot dismissed* 299 NY 679; *see generally, English v City of Albany*, 235 AD2d 977, 979; *Colonno v Executive I Assocs.*, 228 AD2d 859, 860).

The majority concludes that defendant San Juan Construction and Sales Company (hereinafter defendant) does not owe a duty of care to plaintiffs for three reasons: first, the guiderail that had been installed was "plainly visible to * * * the traveling public"; second, "the class of potential plaintiffs is virtually limitless" and liability would extend "in perpetuity" or until a new guiderail is erected; and third, plaintiffs have not demonstrated that "defendant's performance of the underlying contract induced any detrimental reliance." For the reasons that follow, we conclude that the majority's proffered justifications are either erroneous or militate in favor of imposing a duty of care in this case.

Initially, although the majority states that an open and apparent injury-causing defect is a consideration that mitigates against the imposition of a duty, we note that it does not specifically discuss the defect in this case. The issue is not, as the majority contends, whether the guiderail that had been

installed was visible to passing motorists,[1] but whether the defect itself—the missing 100 feet of guiderail—was open and apparent. To suggest, either explicitly or inferentially, that travelers could "readily observ[e]" the 100 feet of missing guiderail is logically and realistically untenable. First, as the majority notes, even highly trained experts did not realize that 100 feet of guiderail was missing. Moreover, such an observation could be made by a motorist only if he or she stopped at the guiderail, measured it and, most importantly, knew how much guiderail that defendant was supposed to install. Because the defective nature of the guiderail was not visually apparent to plaintiffs and other traveling motorists, we conclude that this factor favors the recognition of a duty of care in this case.

Second, the "temporal proximity" and "detrimental reliance" doctrines are not relevant considerations in this case. Notably, the cases that the majority cites in support of the doctrines' application differ from the circumstances presented here in at least one significant respect—each involved the negligent performance of an ongoing, maintenance service contract (*see, Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579; *see also, Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220), whereas completed construction contracts are at issue in this case. Thus, it is legally and factually impossible for plaintiffs to demonstrate " 'detrimental reliance * * * on continued performance' " of defendant's contractual obligations (*Palka v Servicemaster Mgt. Servs. Corp.*, supra, at 587, quoting *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, supra, at 226) under any circumstances because once the construction project was complete, defendant no longer had any obligations to perform.

Finally, although we agree that a duty of care would extend to a large class of potential plaintiffs until the negligently constructed guiderail is corrected, in our opinion, defendant voluntarily assumed this duty when it agreed to install a safety device designed for the sole purpose of protecting travelers who utilize the Thruway. "[T]he concept of a duty of care * * * has meaning only when it is considered in relation to both the harm that the duty exists to prevent and the class of individuals to whom it is owed" (*Waters v New York City Hous. Auth.*, 69 NY2d 225, 228-229). Chief Judge Cardozo taught us that " '[t]he risk reasonably to be perceived defines the duty to be

---

1. Although we agree that the 212.5 feet of guiderail that defendant installed was visible to Thruway motorists, we question how visible the guiderail was during the night or in hazardous weather conditions or both.

obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension' that delimits the duty's scope" (*id.*, at 229, quoting *Palsgraf v Long Is. R. R. Co.*, 248 NY 339, 344). Thus, to determine whether plaintiffs were within the zone of defendant's duty, we must assess the risks that would foreseeably emanate from the negligent construction of the guiderail and the individuals who would " 'be foreseeably endangered' " (*Colonno v Executive I Assocs.*, supra, at 860 [citation omitted]) by those risks (*see, Hamilton v Beretta U.S.A. Corp.*, supra, 232-233).

The subject guiderail was designed to serve one overriding purpose: to protect automobile drivers and passengers from veering off the highway and encountering inherently dangerous, and potentially fatal, situations (*see, Appelbaum v County of Sullivan*, 222 AD2d 987, 990)—such as uncontrollably speeding down a steep embankment. Defendant, an experienced public works contractor, could reasonably foresee that its failure to construct the guiderail in accordance with specified contractual and safety criteria created a condition that posed a danger to individuals who traveled in the vicinity of the defective guiderail.[2] Consequently, we conclude that defendant voluntarily assumed a duty that extended to plaintiffs and other individuals who utilized the portion of the Thruway where the negligently constructed guiderail was installed.

In light of this conclusion, it is necessary to briefly address defendant's remaining contentions. First, defendant is not entitled to summary judgment on the basis of proximate causation because "the fact that the alleged defect 'did not cause plaintiff[s'] vehicle to leave the roadway in the first instance is of no moment' " since the allegedly defective guiderail might constitute " 'a substantial factor in aggravating plaintiff[s'] injuries' " (*Temple v Chenango County*, 228 AD2d 938, 940, quoting *Gutelle v City of New York*, 55 NY2d 794, 796; see, e.g., *Gomez v New York State Thruway Auth.*, 73 NY2d 724, 725; *Lacey v Horan*, 119 AD2d 806, 807; *Pontello v County of Onondaga*, 94 AD2d 427, 431, *lv dismissed* 60 NY2d 560). Further-

---

**2.** Indeed, the majority analogizes the circumstances presented here to cases which address liability arising out of the operation or ownership of real property. As the majority recognizes, the zone of duty in those cases extends to "tenants, employees and 'others who might reasonably be expected to be on the premises' " (quoting *Waters v New York City Hous. Auth.*, supra, at 230). In our opinion, virtually any member of the public, including plaintiffs, could "reasonably be expected" to travel on the pertinent portion of the Thruway and defendant was undoubtedly aware of this fact when it voluntarily agreed to install the guiderail.

more, the experts' affidavits proffered by plaintiffs raise a triable issue of fact regarding defendant's failure to construct the guiderail in accordance with contractual specifications. We would therefore affirm the order of Supreme Court in all respects.

CREW III and ROSE, JJ., concur with MERCURE, J. P.; LAHTINEN and MUGGLIN, JJ., dissent in a separate opinion by LAHTINEN, J.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of defendant San Juan Construction and Sales Company for summary judgment; said motion granted, summary judgment awarded to said defendant and complaint dismissed against it; and as so modified, affirmed.